# EXHIBIT A

Firm No.: 33651

20.5268

# IN THE CIRCUIT COURT OF EIGHTEENTH JUDICIAL CIRCUIT
# DUPAGE COUNTY, ILLINOIS

| | |
|---|---|
| MIKE KENNELLY, | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| v. | ) |
| | ) No.: 2024CH000299 |
| LANDMARK AMERICAN INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| | ) |
| *Defendants.* | ) |

## NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF COMPLAINT AND REQUEST FOR WAIVER OF SERVICE

TO:  Zach Wilson
     Chief Claims Specialist
     Professional Liability Claims
     RSUI Group, Inc.
     zwilson@rsui.com

Dear Counsel,

Attached here, please find a link (20.5268 Verified Complaint for Declaratory Judgment and Other Relief) containing the Plaintiff's Verified Complaint for Declaratory Judgment and Other Relief.  This complaint is served pursuant to Section 2-213 of the Code of Civil Procedure.

You must complete the acknowledgment/waiver part of this form and return a copy of the completed form to the sender within thirty (30) days.  Please return the completed form via email to psyregelas@lpplawfirm.com and Bhallett@lpplawfirm.com.

You must sign and date the acknowledgment/waiver.  If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 60 days from **December 4, 2024**. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgement of receipt of complaint/waiver will be emailed on **December 4, 2024**.

Respectfully submitted,

Date:  December 4, 2024

By:

Attorney for Plaintiff,
MIKE KENNELLY

Peter G. Syregelas
312.970.5661
psyregelas@lpplawfirm.com
Brian R. Hallett
312.995.6576
bhallett@lpplawfirm.com
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St, Suite 3850
Chicago, IL 60606
Firm No. 334651
*Attorneys for Plaintiff*

**ACKNOWLEDGMENT OF RECEIPT OF**
**COMPLAINT / WAIVER**

I declare, under penalty of perjury, that I received a copy of the complaint in the above-captioned matter at:

Zach Wilson
Chief Claims Specialist
Professional Liability Claims
RSUI Group, Inc.
zwilson@rsui.com


Name: _____ (Please print)
        One of the Attorneys for Defendant, **Landmark American Insurance Company**

Signature: _____

Date of Signature: _____

3

20.5268

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

**IN THE CIRCUIT COURT OF EIGHTEENTH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

| | |
|---|---|
| MIKE KENNELLY, | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) No.: **2024CH000299** |
| | ) |
| v. | ) |
| | ) |
| LANDMARK AMERICAN INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| | ) |
| *Defendants.* | ) |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Now comes the Plaintiff, MIKE KENNELLY ("KENNELLY"), by and through his attorneys, LINDSAY, PICKETT & POSTEL, LLC, and for his Complaint for Declaratory Judgment and Other Relief against the Defendant, LANDMARK AMERICAN INSURANCE COMPANY ("Landmark"), and alleges as follows:

### INTRODUCTION

This is an insurance dispute between Kennelly and Landmark. Landmark issued a policy of insurance to Phoenix Rising Management, LLC ("PRM"). Kennelly, who qualifies as an covered person under the policy issued to PRM, was sued for his acts as PRM's principal and officer. Landmark denied coverage to Kennelly for the underlying lawsuit taking the position that the underlying complaint alleged only intentional acts, that were not covered by the policy. Kennelly seeks a declaration that the underlying lawsuit alleges acts that could be classified as negligent acts such that Landmark must cover the costs of litigation under the policy it issued to PRM.

1

## THE PARTIES

1.      PRM is an Illinois corporation with its principal place of business located in DuPage County, Illinois.

2.      Kennelly is an Illinois resident that resides in Lake County, Illinois.

3.      At all times relevant, Landmark was an insurance company authorized to issue policies in the State of Illinois.

4.      At all times relevant, RSUI was an agent of Landmark and was authorized to work on their behalf.

## THE POLICIES

5.      Landmark issued to PRM Professional Liability Policy No. LHR803186, which incepted on May 1, 2023, and lapsed on October 1, 2023 (the "Package Policy"). A true and correct copies of the policy is attached hereto as **Exhibits A**.

## THE UNDERLYING LAWSUIT

6.      Willowview Improvement Association ("Willowview") filed 2024LA000343 against Kennelly, the president of PRM, on March 18, 2024. A true and correct copy of the lawsuit is attached hereto as **Exhibit B**.

## NOTICE AND TENDERS OF DEFENSE

7.      Kennelly filed a claim with Landmark on March 30, 2024, seeking coverage for the lawsuit filed against him.

8.      Landmark acknowledged receipt of the claim on April 2, 2024, via a letter.

9.      On April 15, 2024, Landmark issued a denial of the claim, through RSUI, via letter. A true and correct copy of the letter is attached as **Exhibit C**.

10.     Kennelly and Landmark entered into a tolling agreement on April 17, 2024. A true and correct copy of the reservation of rights letter is attached hereto as **Exhibit D**.

11.     Kennelly notified Landmark through their agent RSUI that they were withdrawing from the tolling agreement on 11/13/2024 via emailed letter. A true and correct copy of the letter is attached hereto as **Exhibit E**.

<u>**COUNT I**</u>
**Declaration that the Policy Applies to the Underlying Suit**

12.     Kennelly restates and incorporates the allegations in paragraphs 1 through 11 above, as if set forth fully herein.

13.     The underlying lawsuit alleges three counts against Kennelly, entitled conversion, fraud, and breach of fiduciary duty, respectively.

14.     Following the filing of the underlying lawsuit, Kennelly was specifically informed by Willowview that the underlying complaint was pled in the manner in which it was to attempt to deprive Kennelly of insurance coverage.

15.     The underlying complaint, however, leaves open the possibility of Kennelly being found negligent, and a jury could return a verdict entered on negligence, which would fall within the policy's coverage.

16.     The contention in the preceding paragraph is, on information and belief, denied by Landmark.

17.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and conditions of section 5/2-701 of the Illinois Code of Civil Procedure (735 ILCS § 5/2-701), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to

3

adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

### PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff, MIKE KENNELLY ("KENNELLY"), prays that this Court enters judgment finding and declaring the rights of the parties as follows:

### AS TO COUNT I:

A.  Find and declare that Defendant Landmark American Insurance Company has a duty and obligation to defend and indemnify Kennelly under the Professional Liability Policy in connection with the underlying lawsuit.

B.  That this Court grant such other and further relief as it deems fair and proper.

C.  That Kennelly be awarded and have and recover his just and reasonable costs incurred herein and have execution issue therefor.

Respectfully submitted:

LINDSAY, PICKETT & POSTEL, LLC

By: _____
       Peter G. Syregelas

Peter G. Syregelas
312.970.5661
psyregelas@lpplawfirm.com
Brian R. Hallett
312.995.6576
bhallett@lpplawfirm.com
LINDSAY, PICKETT & POSTEL, LLC
200 W Madison St, Suite 3850
Chicago, IL 60606
Firm No. ~~62461~~  334651  clk.
*Attorneys for Plaintiff*

4

## <u>**VERIFICATION BY CERTIFICATION**</u>

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedures, the undersigned certifies that the statements set forth in the foregoing instrument are true and correct.

Dated: <u>19 November 2024</u>

Mike Kennelly

EXHIBIT COVER SHEET                                                                 4393 (Rev. 12/20)

**STATE OF ILLINOIS**

**UNITED STATES OF AMERICA**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

**COUNTY OF DU PAGE**

Mike Kennelly,

Plaintiff,

v.

Landmark American Insurance Company,

Defendant,

**2024CH000299**

Case Number

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

File Stamp Here

# EXHIBIT COVER SHEET

Local Court Rules 5.06 and 5.09

**EXHIBIT NAME: A**

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

**Mike Kennelly's Verified Complaint for Declaratory Judgment and Other Relief**

**Document File Date:** Nov 21, 2024

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF:** **Mike Kennelly**

*(Case Party Name)*

Submitted by: Peter G. Syregelas / Lindsay, Pickett & Postel, LLC

Name: **Lindsay, Pickett & Postel, LLC** ☐ Pro Se

DuPage Attorney Number: **334651**

Attorney for: **Plaintiff, Mike Kennelly**

Address: **200 W. Madison St., Suite 3850**

City/State/Zip: **Chicago, IL 60606**

Telephone Number: **312.794.8343**

Email: **psyregelas@lpplawfirm.com**

CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT©
WHEATON, ILLINOIS 60187-0707



**Notice to Policyholders: This contract is issued pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

# *Professional Liability Insurance*

## CLAIM OFFICE:

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com

RSG 51029 0717



**PROFESSIONAL LIABILITY POLICY DECLARATIONS**
**(Claims-Made and Reported Form)**

## Landmark American Insurance Company
(A New Hampshire Stock Co.)
(hereinafter called "the Company")

EXECUTIVE OFFICES:     945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

**Policy Number:**     LHR803186          **RENEWAL OF:**     LHR795835 00

**Named Insured and Mailing Address:**          **Producer Name:**

PHOENIX RISING MANAGEMENT, LLC
2012 CORPORATE LANE
SUITE 108, DPT #8065
Naperville , IL 60563-0726

**Policy Period:**   **From:**  5/1/2023   **To:**  5/1/2024      at 12:01 A.M. Standard Time at the Named Insured address as stated herein.

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED AS FOLLOWS:

1.  **NAMED INSURED'S PROFESSIONAL SERVICES:**     PROPERTY MANAGEMENT FOR OTHERS FOR A FEE

2.  **LIMITS OF LIABILITY:**     $ 1,000,000   **Each Claim**

     $ 1,000,000   **Aggregate Limit**

3.  **DEDUCTIBLE:**     $ 25,000   **Each Claim**

4.  **RETROACTIVE DATE:**     5/1/2018

5.  **PREMIUM:**     $ 42,400.00   Not Subject to Audit
     =$100 BROKER FEE, +SL TAXES/FEES

     Illinois Premium: $42,400.00
     Fees: $100.00
     Surplus Lines Tax: $1,484.00
     Stamping Fee: $17.00
     Fire Marshal Tax: $0.00

6.  **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

     See attached forms list.

**THESE DECLARATIONS TOGETHER WITH A SIGNED COPY OF THE NAME INSURED'S APPLICATION FOR THIS POLICY, COVERAGE FORM(S), FORMS AND ENDORSEMENTS, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

**NOTICE:**  THIS IS A CLAIMS-MADE AND REPORTED POLICY.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE AFFORDED BY THE POLICY WITH YOUR INSURANCE AGENT OR BROKER.

May 02, 2023
Date

By: _____
Authorized Representative

SubIdID#:     590946          BinderID#
                              Created By:     MS

RSG 50004 0714

LANDMARK AMERICAN INSURANCE COMPANY

---

**SCHEDULE OF POLICY ATTACHMENTS AND FORMS**

| Form Number | Form Title |
|---|---|
| RSG 51025 0722 | Miscellaneous Professional Liability Coverage Form Claims Made and Reported Basis |
| ENDT-01 | Biological Contaminants Exclusion - RSG 56010 0903 |
| ENDT-02 | Contingent Bodily Injury and Property Damage Sublimited Coverage |
| ENDT-03 | Cryptocurrency Exclusion - RSG 56216 0822 |
| ENDT-04 | Defense of Disciplinary Proceedings Endorsement - RSG 54090 1022 |
| ENDT-05 | Illinois - Service of Suit - RSG 92003 0322 |
| ENDT-06 | Illinois Important Information to Policyholders Right to File a Complaint - RSG 99043 0604 |
| ENDT-07 | Illinois Surplus Lines Disclosure Notice - RSG 99051 0106 |
| ENDT-08 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-09 | Named Insured Amendatory Endorsement - RSG 54216 1219 |
| ENDT-10 | Network Security and Privacy Coverage (MPL) - RSG 54092 0312 |
| ENDT-11 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-12 | Property Management Additional Exclusions - RSG 56077 1022 |
| ENDT-13 | Real Estate Operations Amendatory Endorsement - RSG 56075 1022 |
| ENDT-14 | Violation of Consumer Protection Laws Exclusion - RSG 56121 1222 |

**Policy No.:** LHR803186

RSG 54081 0710

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM – CLAIMS MADE AND REPORTED BASIS

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. E. Covered Persons and Entities**. The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in **bold** have special meaning. Refer to **Part III. Definitions.**

**Part I. Insuring Agreement**

**A. Covered Services**

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, **Advertising Liability** or **Personal Injury,** even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period,** and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2. Negligent act, error or omission**, Advertising Liability** or **Personal Injury** took place in a covered territory;

3. Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place after the **Retroactive Date** as shown in the Declarations.

**B. Defense and Settlement**

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses**, or has been tendered to the Insured or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent. If, however, the Insured refuses to consent to any settlement recommended by the Company and elects to contest the **Claim,** or continue any legal proceedings in connection with such **Claim,** then the Company's maximum liability shall be limited to the amount for which the **Claim** could have settled, including the total amount of **Claims Expenses** incurred up to the date of the Insured's refusal. Such amounts are subject to the provisions of section **C. Policy Limits.**

The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

The Company shall have the right and the duty to select legal counsel for the defense of a **Claim**. In the event the Insured is entitled by law to select independent counsel to defend the **Claim**, the **Claim Expenses** or other covered costs the Company must pay to that counsel are limited to the rates the Company actually pays to counsel retained by the Company in the defense of similar **Claims** in the community where the **Claim** is being defended. The Company may exercise the right to require that such counsel have experience in defending **Claims** similar to the one pending against the Insured. The Insured agrees that such counsel will comply with the Company's litigation guidelines and reporting requirements, timely respond to the Company's requests, and provide information regarding the **Claim** when requested.

**C. Policy Limits**

Regardless of the number of persons or entities insured or included in **Part I**. **E. Covered Persons and Entities,** or the number of claimants or **Claims** made against the Insured:

1. The maximum liability of the Company for **Damages** and **Claim Expenses** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as each **Claim**;

2. The maximum liability of the Company for all **Damages** and **Claim Expenses** as a result of all **Claims** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as Aggregate.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the applicable Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof. **Claim Expenses** are part of and not in addition to the applicable Limits of Liability. Payment of **Claim Expenses** by the Company reduces the applicable Limits of Liability.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

**D. Deductible Provisions**

The deductible amount shown in the Declarations shall be paid by the Insured, applies to each **Claim** and includes **Damages** or **Claim Expenses,** whether or not a loss payment is made. If the deductible amount is initially paid by the Company, the Named Insured shall reimburse the amount paid within thirty (30) days, upon written request of the Company.

**E. Covered Persons and Entities**

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;

2. Any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

3. Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy.

**F. Covered Territory**

This policy applies to covered **Claims** arising out of negligent act(s), error(s) or omission(s), **Advertising Liability** or **Personal Injury** committed by the Insured anywhere in the world, provided that either the **Claim** or suit is first filed and maintained continuously in the United States of America, its territories or possessions, Puerto Rico or Canada.

**G. Extended Reporting Period**

If the policy is not renewed for any reason, or is cancelled for any reason other than for nonpayment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown in the Declarations, has the right to purchase, within thirty (30) days of policy termination, an extension of the coverage granted by this policy. This reporting period extension shall remain in force for a period of either twelve (12), twenty-four (24) or thirty-six (36) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions, **Advertising Liability** or **Personal Injury** committed before the effective date of the cancellation or nonrenewal, and otherwise covered by this policy. Increased premiums or deductibles or modifications of coverage terms or

conditions upon renewal do not constitute cancellation or nonrenewal.

The premium for this Extended Reporting Period will not exceed one hundred percent (100%) for twelve months, one hundred fifty percent (150%) for twenty-four months or one hundred seventy-five percent (175%) for thirty-six months of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within thirty (30) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

## Part II.  Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

**A.** Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured.

**B.** **Bodily Injury** or **Property Damage**.

**C.** Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

**D.** Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

**E.** A **Claim** by one Insured under this policy against another Insured under this policy.

**F.** Any violation of the Federal Securities Act of 1933 or Securities Exchange Act of 1934 or any other Federal or State securities law or any amendments thereof or additions thereto, or rules or regulations promulgated thereunder.

**G.** Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement, including the Insured's decision to unilaterally terminate or otherwise alter, remove or abridge any rights, benefits or obligations under any contract or agreement.

**H.** Violation of any provisions of the Employee Retirement Income Security Act of 1974, or any amendment, regulation, ruling or order issued pursuant to that Act.

**I.** Breach of express or implied warranty or guarantee.

**J.** Or involving the ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured. Use includes operation, loading and unloading.

**K.** An alleged act, error or omission, **Advertising Liability** or **Personal Injury**, or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

**L.** False advertising or misrepresentation in advertising, but only regarding intentionally false, misleading, deceptive, fraudulent or misrepresenting statements in advertising the Insured's own product or service.

**M.** Unfair competition.

**N.** Liability of any person or entity, or any Company of such person or entity, under any worker's compensation, unemployment compensation, employer's liability, disability, or other similar law.

**O.** Regulatory authority or administrative actions brought by a federal, state or local governmental entity including, but not limited to: any actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental agency.

**P.** The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

**Q. 1.** Refusal to employ;

**2.** Termination of employment;

**3.** Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, retaliation or other employment related practices, procedures, policies, acts or omissions;

**4.** Consequential **Bodily Injury** or **Personal Injury** as a result of **Q. (1)** through **(3)** above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of trial court proceeding.

**R. 1.** The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

**2.** The failure to discover or disclose the existence or amount of **Pollutants** or asbestos;

**3.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **R. (1.)** or **(2.)** above;

**4.** Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

**5.** Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

## Part III. Definitions

**A. Advertising Liability** means injury arising out of one or more of the following offenses:

**1.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**2.** Oral or written publication of material that violates a person's right of privacy;

**3.** Misappropriation of advertising ideas or style of doing business.

**B. Bodily Injury** means physical or mental harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

**C. Claim** means a written demand for monetary or non-monetary relief received by the Insured during the **Policy Period**, including the service of suit, or the institution of an arbitration proceeding. Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A. Notice of Claim** will be considered a **Claim** first made during the **Policy Period**.

**D. Claim Expense** means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and include:

**1.** Attorney fees;

**2.** Costs taxed against the Insured in any **Claim** defended by the Company;

**3.** Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

**4.** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit, and only if said **Claims** are covered by the policy;

**5.** Reasonable expenses incurred by the Insured at the Company's request other than:

    **a.** Loss of earnings;

    **b.** Salaries or other compensation paid to the Insured or any employee of the Insured.

**E.** **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered **Damages**, disputes over fees, deposits, commissions or charges for goods or services.

**F.** **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

**G.** **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

    **3.** Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **5.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

**H.** **Property Damage** means injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured.

**I.** **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission, **Advertising Liability** or **Personal Injury** must have first taken place in order to be considered for coverage under this policy.

**J.** **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, whether live or inanimate; including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. Waste includes materials to be recycled, reconditioned or reclaimed.

**Part IV. Conditions**

**A.** **Notice of Claim**

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim**. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent **Claims** derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information. Please send all claim information to:

    Attention: **Claims** Dept.
    RSUI Group, Inc.
    945 East Paces Ferry Road, Suite 1800
    Atlanta, Georgia 30326-1160
    Or Via Email:
    reportclaims@rsui.com

**B.** **Prohibition of Voluntary Payments and Settlements**

With respect to any **Claim** covered under this policy, the Insured will not make payment, admit liability, settle **Claims,** assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval, except at the Insured's own cost.

**C. Cooperation**

The Insured will cooperate with the Company in the conduct of a **Claim** and, upon the Company's request, submit to examination and interrogation by the Company representative, under oath if required, and will attend hearings and trials and assist in affecting settlements, securing and giving evidence, and obtaining the attendance of witnesses.

**D. Notice of Cancellation and Nonrenewal**

The Named Insured may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

For other than nonpayment of premium or deductible, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or nonrenewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the policy due to the Named Insured's failure to pay a premium or deductible when due, this policy may be cancelled by the Company giving not less than 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation and the policy will terminate on that date. If cancelled by the Company, the earned premium will be computed pro-rata. If cancelled by the Insured, the earned premium will be computed short rate.

**E. Premium and Audit**

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured, as shown in the Declarations, must keep records of information the Company will need for premium computation and, upon request, must send the Company copies of the information.

**F. Authorization**

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to giving and receiving of all notices, exercising the Extended Reporting Period option, canceling the policy, paying all premiums and deductibles and receiving any return premiums that may become due.

**G. Change**

This policy contains all of the agreements concerning the insurance provided. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. The policy terms can be amended or waived only by endorsement issued by the Company, and made a part of this policy.

**H. Subrogation**

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insureds' rights of recovery against any person or organization, and the Insured will execute and deliver instruments and papers, and do whatever else is necessary to secure such rights. The Insured will do nothing after the loss to prejudice such rights.

**I. Other Insurance**

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims**.

**J. Actions Against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant and the Company.

**K. Non-Transferability**

The Insured's rights and duties under this policy may not be transferred without the written consent of the Company.

**L. Coverage in Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

**M. False or Fraudulent Claims**

If an Insured knowingly makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** shall be forfeited.

**N. Application**

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance. The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# BIOLOGICAL CONTAMINANTS EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

**I.** In consideration of the premium charged, it is agreed that the following **Exclusion** is added to the policy:

**Biological Contaminant**;

**II.** It is further agreed that the following **Definition** is added to the policy:

**Biological Contaminant** means any biological irritant or contaminant including but not limited to any form of mold, mildew, mushroom, yeast, fungus, bacteria, virus, insect, allergen and any other type of biological agent, including any substance produced by, emanating from, or arising out of such **Biological Contaminant**.

All other terms and conditions of this policy remain unchanged.

This endorsement effective      5/1/2023
Forms part of Policy Number     LHR803186
Issued to      PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:      01

RSG 56010 0903

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CONTINGENT BODILY INJURY AND PROPERTY DAMAGE SUBLIMITED COVERAGE

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed **Part II. Exclusions, B.** is deleted in its entirety and replaced with the following:

**B.** **Bodily Injury** or **Property Damage**, however this exclusion does not apply to **Bodily Injury** or **Property Damage Claims** and **Claims Expenses** arising out of the professional services as described in the Declarations.  Additionally, coverage is provided solely for **Claims** and **Claims Expenses** arising out of a **Bodily Injury** or **Property Damage** for amounts incurred up to and not exceeding an annual aggregate amount of $100,000.  This **Bodily Injury** or **Property Damage** sub-limit amount shall reduce and is not in addition to the Limits of Liability as stated in the Declarations.

Once this **Bodily Injury** or **Property Damage** sub-limit is exhausted, no further coverage for **Bodily Injury** or **Property Damage** is afforded.

All other terms and conditions of this policy remain unchanged.

This endorsement effective      5/1/2023
Forms part of Policy Number     LHR803186
Issued to      PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:      02

RSG 54152 0616

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CRYPTOCURRENCY EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

1.  In consideration of the premium charged, it is agreed that no coverage shall apply under this policy to any **Claim** and/or **Claim Expenses** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving **Cryptocurrency** or any **Cryptocurrency Offering**.

2.  It is agreed that the following definitions are added to **Part III. Definitions**:

    A.  **Cryptocurrency** means any actual or purported electronic, computer derived, digital or virtual instrument, asset, currency, token, coin, unit of account, store of value, funds, or medium of exchange using encryption techniques, methodologies, or technology, including blockchain or similar mechanisms, to secure, verify and/or validate the transfer of such electronic, computer derived, digital or virtual instrument, asset, currency, unit of account, store of value, funds, or medium of exchange between one or more parties.

    B.  **Cryptocurrency Offering** means any direct, indirect, actual, alleged, attempted, or proposed purchase or sale, or offer to purchase or sell, any **Cryptocurrency** issued or created by, or in connection with the Insured.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number     LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company
                                                                    Endorsement No.:     03

RSG 56216 0822

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# DEFENSE OF DISCIPLINARY PROCEEDINGS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that **Part I. Insuring Agreements**, is amended to include the following:

**A.  Defense of Disciplinary Proceedings**

The Company will pay **Claim Expenses** incurred in the defense of any disciplinary proceeding or investigation against an Insured by any licensing board, disciplinary board, peer review committee, or similar entity alleging professional misconduct or violation of the rules of professional conduct, provided that the alleged misconduct or violation first occurred after the **Retroactive Date** and arises out of the Insured's performance of the Named Insured's professional services as described in the Declarations.  This provision applies only to disciplinary proceedings first brought against an Insured during the **Policy Period** and reported to the Company no later than thirty (30) days after the end of **Policy Period**.  The Company's obligation to defend an Insured under the provision is subject to a sub-Limit of Liability of $50,000 and applies only to **Claims Expenses** incurred with the consent of the Company.  **Damages** are not covered by this provision.

This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of disciplinary proceedings first commenced during the **Policy Period** or the number of Insureds subject to disciplinary proceedings.  There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number     LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:     04

RSG 54090 1022

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT
# (ILLINOIS)

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America.  Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of  this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

The insurer hereby designates the Director of the Illinois Department of Insurance and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.

**LANDMARK AMERICAN INSURANCE COMPANY**

## *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO ILLINOIS POLICYHOLDERS**

**RIGHT TO FILE A COMPLAINT**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?** – This notice is to advise you that should any complaints arise regarding this insurance you may contact the following:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326-1160

404-231-2366

You can also contact the **DEPARTMENT OF INSURANCE** by writing to:

Illinois Department of Insurance
Consumer Division or Public Services Section
Springfield, IL  62767

RSG 99043 0604

LANDMARK AMERICAN INSURANCE COMPANY

## *IMPORTANT NOTICE*

**ILLINOIS SURPLUS LINES DISCLOSURE NOTICE**

**Notice to Policyholder: This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $10,600.00.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number    LHR803186
Issued to    PHOENIX RISING MANAGEMENT, LLC
by    Landmark American Insurance Company

Endorsement No.:     08

RSG 54025 0405

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## NAMED INSURED AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that the **Named Insured** as shown on the Declarations is amended to include:

PHOENIX RISING INSURANCE SERVICES, LLC
PHOENIX RISING SERVICES, LLC

All other terms and conditions of this policy remain unchanged.

This endorsement effective      5/1/2023
forms part of Policy Number      LHR803186
issued to      PHOENIX RISING MANAGEMENT, LLC
by      Landmark American Insurance Company

Endorsement No.:      09

RSG 54216 1219

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy. Please Read It Carefully.*

# NETWORK SECURITY AND PRIVACY COVERAGE (MPL)

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

1. In consideration of the premium charged, it is agreed that coverage shall apply to **Damages** and **Claim Expenses** which the Insured is legally obligated to pay as a result of an accidental release, unauthorized access, distribution, disclosure, use or theft of **Private Personal Information** maintained by the Insured or by a party for whom the Insured is responsible.

   **Private Personal Information** means any information not available to the general public of any natural person who is a consumer, customer or employee of the Insured which can be used to identify such natural person and which is maintained by the Insured. This information includes and is not limited to:

   1. Private Healthcare Information (PHI)

   2. Social Security Numbers

   3. Account numbers including: bank account numbers, credit/debit card numbers

   4. Driver's license numbers

   5. Any other information as defined in federal or state Privacy Laws or Regulations.

2. It is agreed that solely for purposes of coverage provided in this endorsement, **Damages** shall include civil fines and penalties that may be incurred as a result of an accidental release, as described above, of **Private Personal Information**.

3. The Company shall also reimburse the Named Insured, subject to the prior written consent of the Company, for the reasonable costs incurred by the Named Insured for the following:

   **A.** Notification to consumers, customers or employees, including any necessary preparation, legal and advertising costs, in the event of a suspected or known accidental release, unauthorized access, distribution, disclosure, use or theft of **Private Personal Information** maintained by the Insured or by a party for whom the Insured is responsible. This coverage also includes credit monitoring costs to such consumers, customers or employees for up to six months;

   **B.** Professional Services performed by a public relations, crisis management or law firm to minimize potential harm to the Named Insured's business, including the cost of placing advertisements and press releases;

   **C.** Costs of a forensic investigation to determine the cause or perpetrator of an accidental release, unauthorized access, distribution, disclosure, use or theft of **Private Personal Information** maintained by the Insured or by a party for whom the Insured is responsible.

4. It is agreed that coverage for **Damages** and **Claim Expenses** covered by this endorsement is limited to a sub-limit of liability of $25,000 each **Claim** and $25,000 in the aggregate. This **Sublimit of Liability** is part of and not in addition to the applicable Limits of Liability as shown on the Declarations page. Payment of **Damages** and **Claim Expenses** by the Company reduces the applicable Limits of Liability as shown on the Declarations Page.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number     LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:     10

RSG 54092 0312

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

**This policy does not apply;**

a.  **Under any Liability Coverage,** to bodily injury or property damage;

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b.  **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c.  **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d.  **As used in this Endorsement:**

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

This endorsement effective     5/1/2023
Forms part of Policy Number    LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company
                                        Endorsement No.:     11

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means:

   (a) any nuclear reactor;

   (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PROPERTY MANAGEMENT ADDITIONAL EXCLUSIONS

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that **Part II. Exclusions** is amended to include the following:

**A.** Notarization of a signature without the physical appearance of the person who is or claims to be the signator before the Insured.

**B.** Formation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein.

**C.** Discrimination of any kind including, but not limited to, discrimination based upon race, color, creed, age, religion, sex, marital status, national origin or disability.

**D.** Involving any construction defect(s).

**E.** Rendering or failure to render professional services as a builder, business broker, construction manager, escrow agent, insurance agent or insurance broker, mortgage banker or mortgage broker, real estate appraiser or real estate developer.

**F.** Commingling or inability or failure to pay, collect, disburse or safeguard any funds held by any Insured.

**G.** Property management services where the Insured's ownership interest of said properties exceeds 25%.

**H.** Failure to effect or maintain adequate levels or types of insurance.

**I.** Any gain, profit or advantage to which the Insured is not legally entitled.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number     LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:     12

RSG 56077 1022

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# REAL ESTATE OPERATIONS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that:

I.  **Part I. Insuring Agreement, Section E.  Covered Persons and Entities** is deleted in its entirety and replaced with the following:

    **1.**    Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, but only with respect to the professional services rendered by or on behalf of the Named Insured;

    **2.**    Any present or former principal, partner, officer, director, employee or independent contractor of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

    **3.**    Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy.

II.  **Part II. Exclusions, B.** is deleted in its entirety and replaced with the following:

    **B.**    **Bodily Injury** or **Property Damage**, however this exclusion does not apply to any **Claim** for **Property Damage** arising from the distribution, maintenance, operation or use of a lock box.  However, coverage is limited to a sub-limit of liability which will not exceed an aggregate amount of $25,000.  This sub-limit of liability is part of, and not in addition to the Limits of Liability as shown in the Declarations.  There will be no deductible for payments made under this provision.

III.  It is also agreed that the Company will pay for **Claim Expenses** arising out of any Fair Housing Discrimination **Claims** arising out of allegations of harassment, misconduct or discrimination because of or relating to:

    **1.**    Race, creed, color or age;

    **2.**    Sex, sexual preference, national origin or religion; or

    **3.**    Handicap, disability or marital status;

that occurred after the Policy's **Retroactive Date** and that arises out of the Insured's performance of professional services as described in the Declarations.  The Company's obligation to pay **Claim Expenses** to defend an Insured under this supplementary coverage is subject to a sub-Limit of Liability in an aggregate amount of $100,000.

This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of Fair Housing Discrimination **Claims** arising first commenced during the **Policy Period** or the number of Insureds subject to such **Claims**.

There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

IV.  **Part II. Exclusions,** is amended to include the following:

    **1.**    Notarization or acknowledgement of a signature without the physical appearance of the person who is or claims to be the person signing said instrument before an Insured as a notary public.  However, this exclusion shall not apply to an Insured physically located in a state that has adopted Remote Online Notarization ("RON") legislation or has temporarily adopted similar legislation or rules allowing notarization to be performed remotely using online technology.  Any violation or non-compliance of

This endorsement effective    5/1/2023
Forms part of Policy Number    LHR803186
Issued to    PHOENIX RISING MANAGEMENT, LLC
by    Landmark American Insurance Company

                                      Endorsement No.:    13

RSG 56075 1022

state legislation, rules and/or regulations related to an electronic notarial acts and remote notarial acts shall be excluded from coverage.

2.  Any transaction in which any Insured has a direct or indirect beneficial ownership interest as a buyer or seller of real property; however, this exclusion does not apply to real property to which any Insured has taken legal title solely for the immediate resale and has entered into a written contract to sell no later than 180 days after taking legal title.

3.  Formation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein.

4.  Commingling or inability or failure to pay, collect, disburse or safeguard any funds held by any Insured.

5.  Property management services where the Insured's ownership interest of said properties exceeds 25%.

6.  Failure to effect or maintain adequate levels or types of insurance.

7.  Appraisal in which any insured's compensation is determined by the valuation of the real property appraised.

8.  Discrimination of any kind including, but not limited to, discrimination based upon race, color, creed, age, religion, sex, marital status, national origin or disability.

9.  Involving any construction defect(s).

10. Appraisal, auction or sale of real property that is built, owned or developed by any Insured, or by any affiliated entity under common ownership or management.

11. Operations or activities of any insured as an attorney, mortgage banker, mortgage broker, financial advisor, investment advisor, escrow agent, construction manager, property developer, builder, business broker, insurance agent, or Insurance broker.  An insured will not be considered engaging in the activity of an escrow agent when the insured holds earnest money deposits, rental deposits or similar items.

12. Disbursement of any funds from an escrow account to the wrong person, entity or account if induced to do so by any false communication, misrepresentation, deception, scheme or artifice.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# VIOLATION OF CONSUMER PROTECTION LAWS EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

This insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of any federal, state or local consumer protection law(s), statute, ordinance or regulation including, but not limited to, the following:

1. The False Claims Act (FCA), including any amendment of or addition to such law;

2. The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);

4. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

5. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment of or addition to such law;

6. Any that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information;

7. Any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices, including claims asserted under the common law;

8. **Claims** brought by any state or federal government agency, or any person or entity on their behalf, including qui tam **claims**, seeking to enforce any consumer protection law; or

9. Actual or alleged violation of any laws, regulations or guidelines relating to the accessibility of the Insured's website.

10. Any biometric privacy law or any such similar law or statute anywhere in the world that governs or relates to the collection, use, safeguarding, handling, storage, retention or destruction of biometric identifiers, biometric data or biometric information of any kind, including but not limited to retina or iris scans, fingerprints, voiceprints, or scans of hand or face geometry.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     5/1/2023
Forms part of Policy Number     LHR803186
Issued to     PHOENIX RISING MANAGEMENT, LLC
by     Landmark American Insurance Company

Endorsement No.:     14

RSG 56121 1222

| RSUI Group, Inc.<br>945 East Paces Ferry Road, Suite 1800<br>Atlanta, GA  30326-1160 | RENEWAL APPLICATION FOR MISCELLANEOUS<br>PROFESSIONAL LIABILITY INSURANCE<br>(CLAIMS-MADE FORM) |
|---|---|

**General Applicant Information**

1. Name of Applicant: **Phoenix Rising Management, LLC**

2. Any changes in Address?  ☒ Yes ☐ No (if yes, please complete the below)

   Principal Address: **2012 Corporate Lane, Suite 108, DPT#8065**

3. City: **Naperville**   County: _____   State: **IL**   Zip Code: **60563-0726**

   Website: **www.prmchicago.com**

**Applicant Practice**

4. Any change in the applicant's professional activities for which coverage is desired? (if yes, please describe below)   ☐ Yes ☒ No

5. Has any one client (including affiliated clients) account for 25% or more of the Applicant's gross revenues during the past 12 months?  If "yes", please provide the name(s) of the client(s) and percentage.   ☐ Yes ☒ No

6. List the total gross revenues for the past two years derived from those activities in Question 4.  In addition, please list projected revenues for the current year (For Insurance Agents and Brokers, please provide both total gross commissions and premium volume)

   | Year | Amount |
   |---|---|
   | a. Current Projected | $ $3,690,298.00 |
   | b. Past Fiscal Year | $ $5,207,820.00 |
   | c. Second Past Fiscal Year | $ $6,899,298.00 |

7. Please include a list of the Applicant's five (5) largest jobs or projects during the past three (3) years. (Do not complete for Insurance Agents and Brokers)

   | Project / Client Name | Service Performed for Client | Revenue from those Services | Date Service Began | Former Employer of Applicant (Yes or No) | Pct. of gross revenue |
   |---|---|---|---|---|---|
   | Tuxedo Park | Management | $33,397.00 | 01/01/2020 | Y | 1 |
   | Warehouse | Management | $28,590.00 | 01/01/2020 | Y | 1 |
   | Acorn Glen | Management | $22,885.00 | 01/01/2020 | Y | 1 |
   | Lake Side Lofts | Management | $22,200.00 | 01/01/2020 | Y | 1 |
   | Acorn Lofts | Management | $23,122.00 | 01/01/2020 | Y | 1 |

RSG 50082 1022

**Staff Information**

8.     Provide information on the Applicant's Staff:

|  | Full Time | Part Time |
|---|---|---|
| a. Total Number: | 33 | 0 |
| b. Number hired within the past 12 months | 8 | 0 |
| c. Number terminated, retired or resigned within the past 12 months: | 6 | 0 |

9.     Does any current member of the Applicant provide any professional services to any client in which any Applicant member or SPOUSE serves as a director, officer or partner or own any equity or financial interest, or is the Applicant owned by, Associated with or controlled by any other entity?  (If "yes", please provide full details)        ☐ Yes ☒ No

10.   In the past twelve (12) months, has any professional liability claim or suit ever been made against the Applicant or any of its predecessor firms?        ☒ Yes ☐ No
        If "Yes", how many  2____?        Please complete the **Claim Supplement** and provide currently valued company loss runs.

11.   Have all matters in Question 10. been reported to RSUI or to the Applicant's former or current insurer(s) or to the former Insurer of any predecessor firm or former insurer of a current member of the Firm?        ☒ Yes ☐ No

12.   Has any principal, owner, partner or employee for whom coverage is sought been the subject of a disciplinary complaint made to any court, administrative agency or regulatory body? (If "yes", provide full details and documentation)        ☒ Yes ☐ No
        This is a litigious industry. Client owners and renters routinely file complaints in this industry for any perceived slights. I have received complaints for improper landscaping, neighbor disputes and theft of a vacuum cleaner. Most often complaints are filed in an attempt to gain a point of leverage against management.

**Representations**

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated.  All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part hereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy.  The undersigned Applicant declares that if the information supplied on this application changes between the dates of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

| | | |
|---|---|---|
| _____ | CEO | 03/09/2023 |
| Signature of the Insured, Owner, Partner or Principal | Title | Date |

**SIGNATURE REQUIRED – NEW YORK ONLY**

**NEW YORK FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

| | |
|---|---|
| _____ | 03/09/2023 |
| Applicant's Signature | Date |

**No Signature Required**

**ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**ALASKA FRAUD STATEMENT**

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

RSG 50082 1022

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

An act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

### OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### OREGON FRAUD STATEMENT

Any person who knowingly files a claim containing a false or deceptive statement for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

### PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

### PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties.  Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

### TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

RSG 50082 1022



# Certificate of Completion

## Summary

| | |
|---|---|
| Title | RSUI Miscellaneous Professional Liability Renewal |
| File name | RSUI Miscellaneous Professional Liability Renewal.pdf |
| Status | Completed |
| Document guid: | BV4GZ84n4spYg26zbATHeegetjBosrvM |

## Document History

| | |
|---|---|
| 2023-03-09 05:15:22 PM CST | Signed by Michael Kennelly (mk@prmchicago.com)<br>IP 2603:300a:1796:4100:b0e7:cb22:cad4:f8e8 |
| 2023-03-09 05:15:22 PM CST | Signed by Michael Kennelly (mk@prmchicago.com)<br>IP 2603:300a:1796:4100:b0e7:cb22:cad4:f8e8 |

Your policy has been signed on our behalf by our President and by our Secretary.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**



A member of Alleghany Insurance Holdings LLC

EXHIBIT COVER SHEET

4393 (Rev. 12/20)

| UNITED STATES OF AMERICA | |
| --- | --- |

**STATE OF ILLINOIS**     **UNITED STATES OF AMERICA**     **COUNTY OF DU PAGE**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

Mike Kennelly,

Plaintiff,

v.

Landmark American Insurance Company,

Defendant,

**2024CH000299**

Case Number

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

File Stamp Here

# EXHIBIT COVER SHEET
Local Court Rules 5.06 and 5.09

**EXHIBIT NAME: B**

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

**Mike Kennelly's Verified Complaint for Declaratory Judgment and Other Relief**

**Document File Date: Nov 21, 2024**

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF: Mike Kennelly**

*(Case Party Name)*

Submitted by: Peter G. Syregelas / Lindsay, Pickett & Postel, LLC

Name:     **Lindsay, Pickett & Postel, LLC**     ☐ Pro Se
DuPage Attorney Number: **334651**
Attorney for:     **Plaintiff, Mike Kennelly**
Address: **200 W. Madison St., Suite 3850**
City/State/Zip: **Chicago, IL 60606**
Telephone Number: **312.794.8343**
Email:     **psyregelas@lpplawfirm.com**

CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT©
WHEATON, ILLINOIS 60187-0707

SUMMONS - CIRCUIT COURT          SCR 101(d)

3101 (Rev. 5/23)

| STATE OF ILLINOIS | UNITED STATES OF AMERICA<br>IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT | COUNTY OF DU PAGE |

**Willowview Improvement Association, an Illinois not-for-profit corporation,**

PLAINTIFF

vs

**Michael J. Kennelly,**

DEFENDANT

**2024LA000343**

**CASE NUMBER**

**SUMMONS**
**CIRCUIT COURT**

☒ ORIGINAL ☐ ALIAS

File Stamp Here

To each Defendant: **Michael J. Kennelly, 988 Buena Road, Lake Forest, IL 60045**

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the Clerk of the Circuit Court, 505 N. County Farm Road, Wheaton, Illinois, within 30 days after service of this summons not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

You are a party to a civil matter. Read all documents attached to this Summons. Typically, this means you must file an official document with the court, within the time stated on this Summons, called an "Appearance" and a document called an "Answer/Response". Note the Answer/Response is not required for small claims and eviction cases unless ordered by the court. If these documents are not filed on time the court may decide the case without hearing from you, and you could be held in default and lose the case.

Documents must be filed electronically with the court (e-filed), which requires an account be created with an Illinois e-filing service provider, see ilcourts.info/efiling. If you are unable to e-file, you can obtain an exemption that allows filing in-person or by mail.

You may be charged filing fees. If you are unable to pay them, you can file an Application for Waiver of Court Fees. A judge will rule on your eligibility for a fee waiver.

The court may allow you to attend the first court date in this case by videoconference. Visit 18thjudicial.org to find the Zoom link for this case on your court date. Contact the Circuit Court Clerk's office at (630)407-8700 for more information.

Need more help? Visit ilcourthelp.gov or call/text Illinois Court Help at (883)411-1121 for information about going to court, including how to fill out legal documents. Also, free legal information and referrals are available at illinoislegalaid.org. Document forms referred to in this Summons can be found at 18thjudicial.org or ilcourts.info/forms.

¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al (883)411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

To the Officer

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service and not less than three (3) days before the date of remote appearance. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

| Date of Service: |
| To be inserted by officer on copy left with Defendant or other person. |

Name **Ekl Williams & Provenzale LLC** ☐ Pro Se

DuPage Attorney Number: **23492**

Attorney for: **Plaintiff**

Address: **901 Warrenville Road, Suite 175**

City State Zip: **Lisle, IL 60532**

Telephone Number: **630-654-0045**

Email: **teamw@eklwilliams.com**

WITNESS: **CANDICE ADAMS,** Clerk of the Eighteenth Judicial Circuit Court, and the seal thereof, at Wheaton, Illinois, 8/18/2024 1:22 PM

DATED:

*Candice Adams*

Clerk of the Eighteenth Judicial Circuit

MK

**CANDICE ADAMS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS 60187-0707**

SUMMONS - CIRCUIT COURT    SCR 101(d)

3101 (Rev. 5 23)

## SHERIFF'S FEES

Service and return ........................................................................ $ _____

Miles _____ ........................................................... $ _____

**Total** ....................................................................................... $ _____

Sheriff of _____ County

## SHERIFF'S RETURN

I certify that I served this summons on defendant as follows:

☐  (a)  (Individual - **personal**):
By leaving a copy and a copy of the complaint with each individual as follows:

☐  (b)  (Individual - **abode**):
By leaving a copy and a copy of the complaint at the usual place of abode of each individual with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and the complaint in a sealed envelope with postage fully prepaid, addressed to each individual at the usual place of abode, as follows:

☐  (c)  (Corporation):
By leaving a copy and a copy of the complaint with the registered agent, officer, or agent of each corporation as follows:

☐  (d)  (Other service):

☐  (e)  (Unable to Serve):
By _____ ,    Deputy Badge Number: _____

Name of Defendant_____

Name of Person
summons given to _____

Sex_____ Race_____ Approximate age_____

Place of service_____

City , State    _____

Date of service _____ Time_____

Date of Mailing_____

Special Process Server of_____

Name of Defendant _____

Name of Person
summons given to    _____

Sex _____ Race _____ Approx. age _____

Place of service _____

City , State    _____

Date of service _____ Time _____

Date of Mailing _____

Sheriff of _____ County

County Illinois License #_____

By _____

File No. 2140.099

STATE OF ILLINOIS )
                ) SS.
COUNTY OF DUPAGE )

Attorney No. 23492

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS

| | |
|---|---|
| Willowview Improvement Association, an Illinois not-for-profit corporation, | 2024LA000343 |
| Plaintiff, | |
| vs. | Case No. |
| Michael J. Kennelly, | Amount Claimed: $31,182.38, plus punitive damages of $100,000, |
| Defendant. | attorneys fees, & costs. |

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 26863826
2024LA000343
FILEDATE: 3/18/2024 1:22 PM
Date Submitted: 3/18/2024 1:22 PM
Date Accepted: 3/18/2024 3:34 PM
MK

## COMPLAINT AT LAW

NOW COMES Plaintiff, Willowview Improvement Association, an Illinois not-for-profit corporation, ("Willowview") by and through its attorneys, Ekl, Williams & Provenzale, LLC and for its complaint against Defendant, Michael J. Kennelly ("Kennelly"), states as follows:

### I.   Facts Common to All Counts

1.   Willowview is an Illinois not-for-profit corporation organized and existing under the laws of the State of Illinois. Willowview is an association of building owners that own and operate 32 residential buildings consisting of 6 rental units in each building and located in Westmont, DuPage County, Illinois.

2.   Phoenix Rising Management, LLC ("PRM") is an Illinois limited liability company with its principal office located in Naperville, DuPage County, Illinois and engaged in the business of property management.

3.    Kennelly is the manager of PRM who allegedly operates out of the offices of PRM in Naperville, DuPage County Illinois.

4.    On or about May 6, 2021, Willowview, through its Board of Directors, entered into a Residential Community Association Management Agreement ("Agreement") with PRM for property management services at the Willowview location in Westmont, DuPage County, Illinois. See Exhibit A.

5.    According to the terms of the Agreement, PRM was to provide property management services, as more fully described in the Agreement, for a period of two (2) years commencing on June 1, 2021. Thereafter, the term of the Agreement automatically renewed for successive three (3) year renewal terms unless the Agreement was terminated by written notice by either party given to the other party no later than 180 days prior to the expiration of the renewal term.

6.    The Agreement provided, in relevant part, that PRM was required:

a)    to collect all monthly assessments that are due Willowview;

b)    to maintain and post a record of all income and expenses relating to Willowview;

c)    to process Willowview payables through bank accounts established by PRM, as agent for Willowview;

d)    to pay PRM directly in accordance with the designated schedule.

7.    In accordance with the Agreement, Kennelly opened various accounts at First Citizens Bank for receipt of Willowview funds and payment of Willowview payables.

8.    Kennelly was the authorized signer on the Willowview accounts at First Citizens Bank.

2

9.    On September 7, 2023, Kennelly informed Willowview that PRM was suspending services to Willowview effective November 1, 2023.

10.    Despite the claim by Kennelly that services would only be suspended as of November 1, 2023, Kennelly had terminated all employees at PRM as of September 6, 2023.

11.    After September 7, 2023, PRM provided no services of any kind to Willowview.

12.    On September 27, 2023, Willowview was informed by the Illinois Department of Financial and Professional Regulation ("IDFPR") that the Community Association Management License of Kennelly was suspended as of May 2, 2023.

13.    IDFPR suspended Kennelly's license for i) removing Association funds without authority; ii) failing to account for or to remit said funds; iii) acting in a professionally incompetent and grossly negligent manner in performing the duties of the Community Association Manager; iv) engaging in gross overcharging for professional services not tendered or performing and charging for services without authorization; and v) engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public as the owner and CEO of Phoenix Rising Management, LLC.

14.    Immediately following Kennelly's unilateral termination of the PRM management contract, Willowview requested the return of all accounts established and managed by Kennelly at First Citizens Bank for the benefit of Willowview.

3

15.     On September 19, 2023, Willowview received 3 checks from PRM signed by Kennelly for each of the 3 accounts established by Kennelly at First Citizens Bank which closed the accounts.

16.     For the First Citizens Bank account ending in 9873, Kennelly issued a check in the amount of $980.20 to Willowview even though the beginning balance on the account on the August 31, 2023 First Citizen Bank statement was $21,118.45.

17.     A subsequent audit by Willowview has disclosed that Kennelly engaged in a regular practice during the term of the Agreement of overcharging for professional services not tendered or performing and charging for services without authorization.

18.     The actions of Kennelly described above demonstrate a unity of interest and ownership such that the separate personalities of PRM and Kennelly do not exist.

## Count I - Conversion

19.     Willowview repeats and realleges paragraphs 1 - 18 of the Facts Common to All Counts as and for paragraph 19 of Count I.

20.     In accordance with the Agreement, Kennelly was required to maintain separate accounts for Willowview for the receipt of assessments and payment of the just debts of Willowview.

21.     Contrary to the obligations of PRM under the Agreement, Kennelly exercised unauthorized and wrongful control, dominion and ownership over the Willowview accounts and misappropriated Willowview funds by overcharging for professional services not tendered or performing and charging for services without authorization.

4

22.     Willowview had a right to the immediate possession of its accounts at First Citizens Bank and Kennelly wrongfully failed and refused to return the total amount in the Willowview account ending in 9873 upon the termination of the Agreement.

23.     As a result of the wrongful conversion of the Willowview account, Willowview has suffered damages in the amount of $31,182.38.

WHEREFORE, Willowview prays this Court enter judgment in its behalf and against Defendant, Michael J. Kennelly, in the amount of $31,182.38 plus costs of suit.

### Count II - Fraud

24.     Willowview repeats and realleges paragraphs 1 - 18 of the Facts Common to All counts as and for paragraph 24 of Count II.

25.     By entering into the Agreement with Willowview, Kennelly represented that PRM was duly qualified to act as a Community Association Property Management Company and manage Willowview finances under the direction and supervision of Kennelly, a duly licensed Community Association Manager.

26.     Furthermore, Kennelly represented that Willowview assessments would be collected and managed for the payment of proper and authorized Association expenses in accordance with the Agreement.

27.     The representations of Kennelly were material to Willowview entering into the Agreement and allowing PRM to manage Willowview finances.

28.     Kennelly's representations to Willowview to induce Willowview to enter into the Agreement were known by him to be false at the time of the Agreement.

29.     Willowview relied on the truth of the representations of Kennelly and thereby suffered damages.

5

WHEREFORE, Willowview prays this Court enter judgment in its behalf and against defendant, Michael J. Kennelly on Count II in the amount of $31,182.38 plus costs of suit.

### Count III - Breach of Fiduciry Duty

30.     Willowview repeats and realleges paragraphs 1 - 18 of the facts common to all counts and paragraphs 19 - 22 of Count I as and for paragraph 30 of Count III.

31.     By virtue of Willowview transferring to PRM and allowing Kennelly to manage and control the Willowview finances, Kennelly had a fiduciary duty of loyalty to put the financial interests of Willowview above his own and to further act with the utmost care and diligence in managing the Willowview accounts.

32.     Kennelly breached his fiduciary duty to Willowview by overcharging for professional services not tendered or performing and charging for services not authorized.

33.     As a result of Kennelly's conduct, Willowview suffered damages in the amount of $31,182.38.

WHEREFORE, Willowview prays this Court enter judgment in its behalf and against Defendant, Michael J. Kennelly, in the amount of $31,182.38 plus punitive damages in the amount of $100,000 as well as attorney's fees and costs of suit.

Respectfully submitted,

/s/Patrick J. Williams
Ekl, Williams & Provenzale LLC
Attorneys for Plaintiff

Patrick J. Williams
Ekl, Williams & Provenzale LLC
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-0045
Attorney No. 23492
teamw@eklwilliams.com

6

EXHIBIT COVER SHEET

4393 (Rev. 12/20)

**STATE OF ILLINOIS**       **UNITED STATES OF AMERICA**       **COUNTY OF DU PAGE**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

Willoview Improvement Association,

Plaintiff,

v.

Michael J. Kennelly,

Defendant,

Case Number

File Stamp Here

# EXHIBIT COVER SHEET
Local Court Rules 5.06 and 5.09

**EXHIBIT NAME:** A - Residential Community Association Management Agreement

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

Complaint at Law

**Document File Date:** Mar 18, 2024

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF:** Plaintiff

*(Case Party Name)*

Submitted by: Patrick J. Williams

Name:   Ekl, Williams & Provenzale LLC   ☐ Pro Se

DuPage Attorney Number: 23492

Attorney for:   Plaintiff

Address: 901 Warrenville Road, Suite 175

City/State/Zip: Lisle, IL 60532

Telephone Number: 630-654-0045

Email:   teamw@eklwilliams.com

CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT©
WHEATON, ILLINOIS 60187-0707



**Contract:** Residential Community Association Management Agreement

**Date:** May 6, 2021

**Association:** Willowview Improvement Association, Westmont, Illinois 60559

**Agent:** Phoenix Rising Management LLC, 1550 West Carroll Avenue, Suite 300, Chicago, Illinois 60607

This agreement (Agreement) is made and entered into as of the 1st day of May, 2021, by and between Willowview Improvement Association (Association), located in Westmont, Illinois 60559 and Phoenix Rising Management, LLC (Agent) located at 1550 West Carroll Avenue, Suite 300, Chicago, IL 60607 (separately or collectively referred to as "Parties"), Parties having been established in accordance with the laws of the State of Illinois.

**Authority of the agreement:** The Board of Directors (BoD) of the Association, on behalf of the Association, hereby appoints Agent to provide management, related services and represent the Association as managing agent and Agent accepts such appointment.

**The parties further agree as follows:**

**Section 1: Term of the Agreement:** The BoD appoints Agent to exclusively provide services, as defined herein and all applicable attachments or addendums, for the Association effective June 1, 2021 (Effective Date) for a period of two (2) years (Initial Term) after Effective Date. Thereafter, the term of this Agreement shall automatically renew for successive three (3) year renewal terms unless the Agreement is terminated as provided in Section 26.

**Section 2: Proper Notice (Communications):** Any notice required of Agent under this Agreement shall consist of one of the following (separately or collectively referred to as "Proper Notice"): formal letter delivered by first class mail to the BoD President or members of the BoD; notices sent to the BoD by electronic means (email); notice posted in conjunction with the Association's Monthly Financials; notices published in updates to the Transition Plan; notices posted to the web-portal, adjustment to the Annual Operations Schedule (AOS); or inclusion in the draft budget.

**PHOENIX RISING MANAGEMENT, LLC**
RESIDENTIAL COMMUNITY MANAGEMENT

**Section 3: Agents Compensation for Routine Services:** The Association shall pay Agent a fee of:

    a.  $600.00 monthly ($7,200.00 annually) for its performance of Routine Management Services.

    b.  This fee will not be adjusted during the Initial Term (3 years). The fee shall be adjusted a minimum of 5% annually, following the initial term. Fee adjustments in excess of 5%, during any successive term, shall be proposed to the BoD by submission of the draft budget and incorporated into this Agreement with adoption of the annual budget. Agent shall be compensated for Non-Routine Services as delineated in the fee schedule (Attachment B), which may change annually, which changes, shall be communicated and incorporated into this Agreement with Proper Notice.

    c.  Contractual fees will be automatically processed, a recurring charge without supporting invoices, on or about the first business day of each month.

**Section 4: Routine Management Services of Agent:** The routine management services of the Agent shall be delineated in the Agreement and in the AOS (Attachment C) to this Agreement. Agent shall provide Routine Management Services to the Association to the extent, for the period, and upon the terms of this Agreement. Agent shall perform all Routine Management Services in the name of and on behalf of the Association, and the Association hereby gives Agent the authority, resources and powers required to perform these services. Agent agrees to further integrate Routine Management Services which Agent shall incorporate in the AOS and make available to the Association with Proper Notice.

    a.  Maintain and post a record of all income and expenses relating to the Association (financial statements) consisting of a Balance Sheet, a Budget Comparison Report, an Expense Distribution Report, an Account Receivables Aging Report, Aging Payables and a copy of all Association Bank Statements for the preceding month. Any additional reporting requirements can be provided upon the BoD's request and will be billed in accordance to the rate schedule appearing on Attachment B.

    b.  Process Association payables.

    c.  Prepare and submit a draft annual budget no later than (NLT) October 15 of the preceding year.

    d.  Post Year End Financials (YEF) Report No Later Than (NLT) June 1 of the following year. However, submission of such YEF Report shall not be construed to require Agent to supply a compilation or audit. Any compilation or audit required by the Association shall be prepared at the Association's expense by an outside, third-party auditor(s) and Agent's time billed in accordance with the rate schedule appearing on Attachment B.

    e.  Monitor status of and coordinate Critical Exams at expense of Association.

    f.  Maintain Annual Operations Schedule [(AOS)(Attachment C)] capturing the Associations annual budgeted requirements.

    g.  Prepare bid packages for all unbudgeted requirements exceeding ten-thousand ($10,000.00).

    h.  Establish and maintain service and utility contracts. On behalf of the Association and per the AOS, Agent will negotiate service and usage contracts for utilities as necessary. Agent may but is not obligated to make its Vendor and or Energy Program available to the Association (Attachment D).

    i.  Establish and maintain insurance as specified in paragraph 18 at the expense of the Association.

    j.  Place managing agent signage.

    k.  Maintain permits.

    l.  Maintain Association records and files.

    m.  Maintain Association web-site (as provided by Agent).

1550 W. Carroll Avenue • Suite 300    Chicago, IL 60607    o: 312-850-3251   f: 312-850-3258    6600 W. College Drive • Suite 207   Palos Heights, IL 60463

2

**PHOENIX RISING MANAGEMENT, LLC**

RESIDENTIAL COMMUNITY MANAGEMENT

n.   Bond employees as per Sections 12(a)(3)(B) and 18.7(d) of the Illinois Condominium Property Act.
o.   Pool Management:
    1.   Manage pool guard contract.
    2.   Pay all invoices.
    3.   Interface directly with pool guard management and summer pool manager.
    4.   Manage the seasonal opening and closing of the pool.
    5.   Order and distribute pool passes.
    6.   Create pool rules document per direction of pool guards.
    7.   Physically inspect the pool and pool house area.
    8.   Take first calls for any issues:
        i.   Owner/tenant complaints.
        ii.   Lost passes.
        iii.   Rule's violations.
    9.   Turn on/off water and phone as directed by pool guards.
p.   Landscape Management:
    1.   Manage the landscaping contract.
    2.   Pay all invoices.
    3.   Interface directly with the landscaper.
    4.   Manage spring/fall clean ups.
q.   Day to day issues:
    1.   Manage calls for excess junk next to an owner's garbage can (furniture, mattresses, televisions).
    2.   Fine owners for rules violations:
        i.   Junk on balconies.
        ii.   Abandoned vehicles.
        iii.   Satellite dishes.
    3.   Manage emergency landscaping requirements (downed trees and limbs).
    4.   Manage quality of pond water.
    5.   Manage animal control.
    6.   Manage capital projects (for example, installation of new lights).
r.   BoD Meetings:
    1.   Record and distribute notes.
    2.   Supervise meetings.
    3.   Collect proxy statements.
    4.   Manage BoD elections.

**Section 5: Agent Systems, Processes, Policies and Procedures:** Agent will address the following routine requirements in accordance with these agreed upon procedures and has the authority to address these requirements as follows. With the introduction of new technologies, development of vendor relationships, refinement of systems based on lessons learned, resourcing and developing conditions, it may become necessary to modify these processes or establish new systems from time-to-time. Such modifications or additions will be communicated by Proper Notice and incorporated into this Agreement by reference.

1550 W. Carroll Avenue • Suite 300     6600 W. College Drive • Suite 207
Chicago, IL 60607                          Palos Heights, IL 60463
                       o: 312.850.3251     f: 312.850.3258

3

PHOENIX RISING MANAGEMENT, LLC
RESIDENTIAL COMMUNITY MANAGEMENT

**Section 5.1: Maintain Common Elements:** Agent shall Maintain the common elements at the expense of the Association and in accordance with the Association's approved budget, direction of the BoD and or AOS. Agent shall perform all acts reasonably deemed necessary for the proper management of the Association.

**Section 5.2: Collect Monthly Home Owner (HO) Assessments:** Agent shall collect all monthly assessments that are due the Association.

    a.  Agent shall coordinate on behalf of the Association for the mailing (hard copy and/or electronic) of HO Statements on a monthly basis.

    b.  Agent shall process delinquent HO's in accordance with the timeline provided below. The timeline may be adjusted, at the sole discretion of the Agent, based on extenuating circumstances such as legal actions (foreclosure actions or bankruptcy), client communication, volume of collection actions and BoD guidance;

        1.  30 Days Delinquent: Send a 30-Day Courtesy Letter of non-receipt of assessments.
        2.  60 Days Delinquent: Send a 10-Day Notice of Demand.
        3.  75 Days Delinquent: HO accounts are turned over to Association Counsel for processing.

    c.  Collection services will be provided per Attachment B.

    d.  The BoD will retain final approving authority for all evictions. If the BoD fails to respond within twelve (12) hours of an eviction notice, or at the time of judgement, then Agent has the authority to proceed at its discretion.

**5.3: Personnel:**

    a.  Agent Personnel:

        1.  Agent shall designate one (1) employee as the Primary Contact for the Association, identified as the Community Manager (CM) or Assistant Community Manager (ACM).

        2.  The Primary Contact or designated alternative will attend two (2) meetings of the BoD annually held by conference call, no Fridays, weekends or holidays. Meetings will be in person. Agent will provide a note taker to record the draft Meeting Minutes for approval by the BoD per the Fee Schedule (Attachment B).

        3.  All such personnel shall be employees of the Agent and all salaries, taxes, payroll charges, and other expenses payable to or on account of such employees shall be operating expenses of the Agent unless otherwise agreed to by Association in writing.

        4.  In the event of the filing of a petition for unionization, or enactment of any law, regulation or mandate by any authority having jurisdiction over the subject matter of this Agreement, that alters the hours of service, rates of pay, working condition or Agent's cost of performing the services provided herein, Agent may, upon Proper Notice, to the Association, adjust the rates of its employees as a result of the actual increased costs incurred by Agent related to the foregoing.

    b.  Association Personnel: All salaries, taxes, payroll charges, and other expenses payable to or on account of such employees shall be operating expenses of the Association. Agent may but is not required to resource these personnel with hand-held devices allowing for phone, text and email access. All related costs to be billed directly back against the Association (Attachment B).

1550 W. Carroll Avenue • Suite 300
Chicago, IL 60607        O: 312-850-3251  f: 312-850-3258      6400 W. College Drive • Suite 207
Palos Heights, IL 60463

4



**5.4: Water penetration (leaks):** In the event of water leaks, including but not limited to in-unit leaks, Agent shall coordinate for the inspection of the incident and attempt to determine the most likely source of the problem. Remedial repair(s) will be coordinated and implemented by Agent in an attempt to quickly address the problem and contain costs. In the event of a persistent or reoccurring leak(s), a third-party contractor will be retained that specializes in water penetration issues. The contractor will provide a prioritized list of most likely sources of the leak which Agent will then systematically address. Agent shall continuously evaluate the effectiveness of each repair. Agent will engage an Engineer (Professional Engineer), Architect or Licensed General Contractor if Agent is unable to remediate the water penetration after repeated efforts over an extended period of time. All costs associated with leak investigations and repairs will be invoiced as per Attachment B.

**5.5: Infestations:** Agent shall treat all infestations, to include but not limited to lice, rodents, beetles and bed-bugs as an Emergency Condition (Section 31) and has the authority to address as such. Agent shall use its best efforts to remain discrete so as not to unreasonably embarrass any individual owners, renters or the Association. Agent will notify the BoD of when these conditions exist.

**5.6: Taxes:** Agent shall, on behalf of and at the expense of the Association, execute and file all tax and other returns and perform all acts required by federal, state and local tax laws.
    a. Complex returns, those tied to Association loans or undergoing audits, will be completed by 3rd Party accounting firms. All others will be processed internally by Agent as per Attachment B.
    b. Agent shall contract with a 3rd party service provider to submit property tax appeals on behalf of the Association. 3rd Party and Agent fees for successful appeals will be charged back to the Association in accordance with Attachment B.

**5.7: Disposition of Funds:** Agent shall deposit all monies in a financial institution of Agent's choice whose deposits are insured by the federal government up to the maximum allowed by law and the Federal Deposit Insurance Corporation (FDIC).
    a. Maintain signature cards in Agent name.
    b. Agent has no obligation to advance funds to the Association. Any funds advanced to the Association by Agent shall be immediately repaid to Agent; unpaid balances shall bear an interest rate as per Attachment B.

**Section 6: Non-Routine Services (invoiced as per Attachment B):**
    a. Financial analysis and special reports.
    b. Issue Common Area keys, FOBs and remotes.
    c. Program intercom.
    d. Process:
        1. Process loan requirements.
        2. Registered Agent requirements.
        3. Annual Report requirements.
        4. Violations and judicial proceedings.
        5. Refinancing and closings.
    e. Maintain financial accounts outside of Agents network.

1550 W. Carroll Avenue • Suite 300, Chicago, IL 60607    p: 312-850-3251   f: 312-850-3258    6600 W. College Drive • Suite 207, Palos Heights, IL 60463

5

PHOENIX RISING MANAGEMENT, LLC
RESIDENTIAL COMMUNITY MANAGEMENT

 f. On-site assessment box pick-up.
 g. Provide:
   1. Audit support.
   2. Emergency (after hour/holiday/weekend) services.
   3. Litigation support.
   4. Automation support.
   5. Backup for unavailable Associations staff.

**Section 7: Limitations on Agent's Authority and Responsibility:** Agent shall not make any unbudgeted expenditures or nonrecurring contractual obligation exceeding $5,000.00 with the exceptions of contractual obligations, budgeted items, to sustain essential services (gas, electric, water and insurance) or to address Emergency Conditions (Section 31).
 a. Agent shall not make any single purchase of equipment, tools or supplies exceeding $5,000.00.
 b. Agent not responsible for maintenance of individual units.
 c. Agent has no responsibility or obligation to assist Association Commissions or Committees.
 d. Agent shall have no responsibility to make any structural changes.

**Section 8: Building compliance:** Agent shall not be responsible for the compliance of the Association or any of its equipment with the requirements of any building codes or with any statutes, ordinances, laws, rules, or regulations (including those relating to the existence and disposal of solid, liquid, and gaseous wastes, and toxic or hazardous substances) of any city, county, state, or federal governments or agencies, or any public authority or official thereof having jurisdiction over it. The Association represents that to the best of its collective knowledge that it is in compliance with all such requirements. The Association agrees to indemnify, defend, and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed on them by reason of any present or future violation or alleged violation of such laws, ordinances, rules, or regulations.

**Section 9: Agent Assumes No Liability:** Agent assumes no liability whatsoever for any acts or omissions of the BoD or the Association, or any previous BoD or current or previous owners, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any HO in the payment of any assessment or other charges due the Association or in the performance of any obligations owed by any HO to the Association, pursuant to any existing agreement. Agent likewise assumes no liability for any failure of or default by concessionaires in any rental or other payments to the Association. Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the terms of this Agreement. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of the Association in writing, and the Association shall promptly cure them.

**Section 10: Affiliated Firms & Subsidiaries:** Agent shall disclose by Proper Notice any ownership interest that exists between the Agent and any other firm or individual with whom Agent proposes to contract with, or purchase goods or services from, on behalf of the Association. Further, Attachment D will include a list of all Agent's divisions or affiliated companies. Agent

1550 W. Carroll Avenue • Suite 300
Chicago, IL 60607    O: 312-850-3251   F: 312-850-3250    6600 W. College Drive • Suite 207
Palos Heights, IL 60463

6

affiliates will assess fees for services provided. Fees may also be paid by third party vendors to Agent or a designated affiliate/subsidiary.

**Section 11: Development of Business Model:** Agent may further develop its business model to further integrate Routine Management Services and maintenance requirements which Agent shall incorporate into the AOS and or budget and implement with Proper Notice.

**Section 12: Obligations of the Association:**

a. Maintain a sufficient operating balance to pay the expenses set forth in the Association Budget, the AOS and this agreement.

b. Cooperate with Agent to the extent required to perform expeditiously, efficiently and economically the services required under this Agreement.

c. Familiarize new members of the BoD with this agreement, standards and customs of the Association.

d. Authorize the storage of its records in an electronic searchable, retrievable data base.

e. Utilize a third-party accounting firm to collect votes/proxies, verify eligibility, audit and certify annual election results.

f. Recording minutes of BoD meetings shall be the responsibly of the BoD Secretary. If directed, Agent, will provide an individual, at the clerical rate (Attachment A), other than the designated account representative (Community Manager), to draft notes for the BoD Secretary.

g. Approve annual budget no later than no later than November 20th of each year. Agent will deem the Association Budget adopted by November 20th if the Association has failed to conduct a Budget Adoption Meeting.

h. Pending payables exceeding ten per-cent (10%) of the operating budget for a period of over sixty (60) days, the BoD will pass a Special Assessment within ninety (90) days to satisfy all outstanding payables.

**Section 13: Indemnification:** To the fullest extent permitted by law, the Association, BoD or any employees or agents related thereto shall indemnify and hold harmless the Agent, its consultants and employees from and against claims, damages, losses and expenses, including but not limited to any fines, settlements and attorney's fees, arising out of or resulting from performance services provided by Agent.

**Section 14: Pay all expenses of any litigation:** The Association shall insure the Association, BoD, Agent and itself against liability and bear the expense of any and all litigation against the Association, BoD and Agent. The Association shall pay all expenses incurred by the Agent including, but not limited to, Agent's costs and time, any liability, fines, penalties or the like, settlement amounts, and attorneys' fees for counsel employed to represent Agent in any proceeding, mediation, Arbitration or suit involving breach of this Agreement by the Association or the BoD and/or any alleged or actual violation by the Association, the BoD or Agent, or any combination of all of them. Further, the Association shall pay all expenses incurred by the Agent including, but not limited to, Agent's costs and time, any liability, fines, penalties or the like, settlement amounts, and attorneys' fees for counsel employed to represent and advise Agent in any proceeding or suit of any law or regulation of any governmental body, including but not limited to the Illinois Community Manager Licensing Board,

1550 W. Carroll Avenue • Suite 300      6600 W. College Drive • Suite 207
Chicago, IL 60602        P. 312-850-3251   F. 312-850-3258      Palos Heights, IL 60463

7



Illinois Department of Financial and Professional Regulations (IDFPR) the Illinois Insurance Licensing Commission and or any other municipal or administrative board with oversight authority.

**Section 15: Capital Investments:** The Association shall employ a properly Licensed Professional; Professional Engineer (PE), Architect or General Contractor (GC) for all Capital Investment Projects which are identified as projects greater than $10,000.00 or projects that exceed ten-percent (10%) of the Associations Annual Operating Budget. Responsibilities by stakeholder:

a. BoD:
1. Identify need for Capital Projects and initiate the process.
2. Engage a Licensed Professional to develop project scope and manage all Capital Projects.
3. Designate a single BoD Point of Contact (POC) invested with the requisite authority to issue directives to Management, the Licensed Professionals, supporting contractors, distribute funds and approve Change Orders as necessary.
4. Engage a project Counsel and Auditor.
5. Provide project and financing guidance to both Management and the Licensed Professional so they can develop project scope and project options as appropriate.
6. Review, understand and approve project scope and project specifications.
7. Approve Project Audit.
8. Provide resources required to complete the Capital Project.
9. Formally approve Agreements and Financing Plan at an open meeting of the BoD.
10. Familiarize themselves and new members of the BoD with the Capital Project.

b. Licensed Professional:
1. Develop project scope and bid specifications.
2. Advise the BoD and Homeowners on the need to implement repairs and scope of project.
3. Facilitate the bidding process for the project.
4. Present bid packages to the BoD with recommendations.
5. Perform field observations during the Capital Project.
6. Coordinate vendor access to the facility and individual owner units as required.
7. Present Change Orders to the BoD for review and approval.
8. Communicate directly with the BoD.
9. Provide periodic updates to the BoD as necessary.
10. Review payments to 3rd party vendors to be executed by Management.
11. Provide close out briefing to the BoD and Home Owners within 120 days of project completion.
12. Assist with Project Audit.

c. Management:
1. Develop Licensed Professional options for the BoD's consideration.
2. Develop and coordinate financing options In Accordance With (IAW) BoD Project Guidance.
3. Distribute Association funds as approved by the BoD and POC.

1550 W. Carroll Avenue • Suite 300
Chicago, IL 60607                              o: 312-650-3251    f: 312-650-3258                          6600 W. College Drive • Suite 207
                                                                                                           Palos Heights, IL 60463

8

PHOENIX RISING MANAGEMENT, LLC
RESIDENTIAL COMMUNITY MANAGEMENT

4. Emplace appropriate insurance to protect the BoD, the BoD POC, Licensed Professional operating on behalf of the BoD and Management.
5. Obtain and maintain insurance certificates for all 3rd party vendors participating in the project.
6. Maintain Project Records; bid specifications, bid proposals, contracts, change orders, certificates of insurance, disbursements and financial statements.
7. Coordinate periodic updates by the Licensed Professional to the BoD and Home Owners.
8. Manage Home Owner Communications.
9. Coordinate and facilitate Project Audit within 180 days of project completion.

**Section 16: Key Boxes and Containers:** The Association shall authorize Agent to;

a. Remove any on-site containers utilized as Drop Boxes, for the purpose of leaving keys, written communications or instructions for Agent. Such containers pose an unnecessary security risk and generate miscommunications.

b. Remove any key containers left by servicing vendors or real-estate agents. Such containers unnecessarily compromise security.

**Section 17: Standards of Civility:** The BoD will enforce basic standards of civility within the Association (BoD, HO and Renters).

a. If a member of the Association acts in an inappropriate, hostile, aggressive or otherwise threatening or degrading manner toward the staff, vendors servicing the Association or other members of the Association, on more than one occasion (physically, verbally, electronic or through social media), the BoD or an appointed representative will directly engage the offending individual in a good faith effort to correct this behavior. If the BoD is unable or unwilling to affect this behavior then the BoD, will on behalf of the Association, through Agent, engage Associations legal counsel to take the appropriate action.

b. Socially unacceptable, aggressive, demeaning or disruptive behavior will not go unchecked or uncensored becoming an acceptable norm within the Association.

c. Agent may limit communications, at its sole discretion, with any party engaging a pattern of unacceptable behavior as described above, to written letters sent via U.S. Mail.

**Section 18: Insurance:** The Association shall establish and maintain appropriate insurance at its own expense, defined as a minimum of;

a. Property: Providing for both damages and full replacement costs at 125%.
b. General Liability: Providing $1,000,000.00 ($1M) per occurrence and $2M aggregate.
c. Directors & Officers: $1M.
d. Crime: Covering all the Association Reserves and three (3) months of assessments.
e. Workers Compensation: Bodily injury by accident, disease of $500,000.00 (500K). Unless sufficient and proper coverage can be secured under the General Liability Policy.
f. Hired and Non-Owned Automobile: $1M per occurrence and $2M aggregate.
g. Umbrella: For all third-party liability claims of not less than $10M.
h. Deductibles of no more than $5,000.00 per policy.

1520 W. Carroll Avenue • Suite 300
Chicago, IL 60607
O: 312.650.3251 | F: 312.650.3254
6600 W. College Drive • Suite 207
Palos Heights, IL 60463

9

PHOENIX RISING MANAGEMENT LLC

RESIDENTIAL COMMUNITY MANAGEMENT

i.  Carriers must maintain the following minimum AM Best Rating:
    a.  Secure Rating: A to A ++
    b.  Surplus Rating: XV
j.  Agent shall be listed as Named or Additional Insured.
k.  The Association shall provide or Agent affiliate shall secure the Certificate of Insurance (COI) verifying such insurance as soon as practicable from the date of execution of this Agreement;
l.  Or, Agent's affiliate may, but shall not be obligated to, bind said insurance and charge the cost thereof to the account of the Association.
m.  If coverage is placed through Agent Affiliate, Agent is required to provide a COI verifying coverage within ten (10) days of request.  Agent is not required to provide any further documentation evidencing placement of the insurance.

**Section 19: Life Safety Systems:**  The Association will maintain all installed Life Safety and access systems/points at the Associations expense.

a.  Systems may include but not limited to the following:
    1.  Annunciator Panels.
    2.  Back-Flow Regulators.
    3.  Carbon Monoxide Detectors.
    4.  Emergency Lighting.
    5.  Fire Extinguishers.
    6.  Fire Panels.
    7.  Pumps (Fire, Compressed Air or Wet/Dry Systems).
    8.  Smoke Detectors.
    9.  Sprinklers (Residential and Garage).
    10. Stand Pipes.
    11. Strobe Lights.
b.  The Association will not, in the interest of expediency or to reduce costs, de-activate, disable or otherwise render installed life safety systems inoperable.  In the event that any life-safety system is malfunctioning or inoperable, Agent will address the deficiency as an Emergency Condition (Section 31) and take those actions required to place the system back in operation at the earliest possible opportunity.

**Section 20: Access Systems:** The Association will maintain all access systems and points at its own expense.

a.  Systems may include but not limited to the following:
    1.  All Doors (lobby, rear-entry, garage or other service door).
    2.  Gates (entry-way, walk-way or parking garage/lot).
    3.  Stairwells.
b.  The Association will not, in the interest of expediency or to reduce costs, de-activate, disable or otherwise render access points or systems inoperable or inaccessible. In the event that any access point or system is malfunctioning or inoperable, Agent will address the deficiency as an Emergency Condition (Section 31) and take those actions required to place the system back in operation at the earliest possible opportunity.

1550 W. Carroll Avenue • Suite 300          O: 312.850.3251    E: 312.850.3258          6600 W. College Drive • Suite 207
Chicago, IL 60007                                                                     Palos Heights, IL 00465

10



**Section 21: Snow Removal:** Snow removal and application of de-icing agents for all the common walk-ways, entrances and parking areas of the Association must be addressed under all conditions and may not be deferred in the interest of economizing on this requirement. Agent shall periodically update the Inclement Weather Plan (Attachment F) specifying standards and Agent's actions with Proper Notice.

**Section 22: Association Rules & Regulations:** Agent shall provide a set of Rules & Regulations for the BoD consideration. The proposed Rules & Regulations support Agent's internal systems and processes and will enable Agent to more efficiently manage the Association. The BoD agrees to consider adoption of the proposed Rules & Regulations with such revisions as are consistent with the Associations Governing Documents and culture. If the BoD declines to adopt the Agent's proposed Rules & Regulations, then the Association must, at a minimum, formally adopt, or have in place, Rules & Regulations stipulating; late fees for assessments, assessment due dates, fines, violations, appeals, dispute resolution, disposition of year-end excess operating funds, pets and noise restrictions.

**Section 23: Single Point of Contact:** Upon request and in collaboration with Agent, the BoD shall designate a mutually acceptable single member of the BoD to coordinate with Agent on any matter relating to the management of the Association. In the absence of any direction or agreement, Agent shall identify a member of the BoD, notify the BoD, and reasonably assume any directives issued by this individual have been communicated to and have the approval/support of a majority of the BoD.

**Section 24: Non-Solicitation of Agent's Employees:** Unless otherwise provided in this Agreement or by written addendum to this Agreement, the Association and its members, employees and/or agents, hereby covenants and agrees that it will not disturb, hire, entice away or in any other manner persuade any of Agent's employees to alter, or convince said employees to alter, modify, or terminate his/her relationship with Agent or in any way employ any of the aforementioned employees during the term of this Agreement or for a period of thirty-six (36) calendar months after the expiration or termination of this Agreement. Breach of this provision shall result in damages paid by the Association to Agent in an amount equal to 2.5 times the employee's gross salary per occurrence. The Association shall pay all expenses incurred by Agent including, but not limited to, Agent's costs and time, all attorneys' fees, costs, and expenses incurred to collect such damages. In the event a court determines that the language of this paragraph, in whole or in part, is in violation of law existing in the jurisdiction in which this paragraph is being enforced, the parties hereto agree that said court can apply a lesser standard without invalidating the paragraph as a whole.

**Section 25: Association responsible for payments:**

    a.   Non-routine services: The Association is responsible for the payment of all non-routine services. Such invoices will be automatically processed as contractual obligations as identified in Attachment B.

    b.   Authorize use of automatic electronic on-line transfers, such as Electronic Checks (eChecks), to pay recurring Association Fees, contractual, utilities, insurance or debt servicing.

1550 W. Carroll Avenue • Suite 500
Chicago, IL 60607        O: 312-850-3251   F: 312-850-3258        6600 W. College Drive • Suite 207
Palos Heights, IL 60463

11



c. Third party servicing vendors will be paid through Agent Affiliate [(Phoenix Rising Management Services) (Attachment E)].

d. Termination: Upon termination of or withdrawal from this Agreement by either Party, the Association shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of the Association and responsibility for payment of all unpaid bills. Agent may withhold and deposit funds in its operating account, not to exceed the aggregate amount of all outstanding bills at the time of termination (as a general guideline ten percent (10%) of the annual operating budget, for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced, service transition requirements and to close accounts. Notwithstanding the funds set aside to satisfy pending Association obligations and transition requirement, all remaining contractual obligations through the remaining term of the agreement and/or any funds advanced on behalf of the Association shall be immediately addressed from available funds to include all previously processed credits. Agent shall deliver to the Association, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due the Association which were held by Agent with respect to the Association, a third-party audit/compilation or special review of the Association's records, as well as a final accounting reflecting the balance of income and expenses with respect to the Property as of the date of termination or withdrawal.

**Section 26: Termination:** Either the Association or Agent may terminate this Agreement during any Renewal Period provided that written notice is given to the other party no later than the one-hundred and eightieth (180) day prior to the expiration of said Renewal Period.

**Section 27: Relationship of Agent To the Association:** The relationship of the parties to this Agreement shall be that of Association and Agent. Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement. Agent shall have the authority to sign or bind on behalf of the Association:
a. Annual Report.
b. Insurance Policies.
c. Service Agreements.
d. State and Federal Tax Returns.

**Section 28: Confidentiality:** Parties recognize and acknowledge that during the term of the Agreement each Party will have access to confidential information. All Parties recognize that this information is strictly confidential and agree that neither will divulge, disclose or communicate to anyone, directly or indirectly, during the term of this Agreement or for three (3) years thereafter, any information of any kind, nature or description concerning any matters affecting or relating to the other Party. The Parties hereto acknowledge that any breach of the terms of this section is a material breach of this Agreement and as such the aggrieved party shall be entitled to seek, as additional damages, an amount equal to five (5) times the amount of the damages awarded.

**Section 29: Indemnification Survives Termination:** All representations, warranties and indemnification obligations of the parties toward each other contained herein shall survive the termination of this Agreement.

1550 W. Carroll Avenue • Suite 300    6600 W. College Drive • Suite 207
Chicago, IL 60607          O: 312-650-3251   F: 312-650-3258    Palos Heights, IL 60463

12

**PHOENIX RISING MANAGEMENT, LLC**
RESIDENTIAL COMMUNITY MANAGEMENT

**Section 30: Start-Up:** Agent shall use its best efforts to obtain from previous management all outstanding invoices and transfer vendor accounts. Agent shall be responsible for posting the opening Owner ledger balances as provided by previous management and depositing any funds. In the absence of any ledgers from previous management, Agent will assume all Owner ledgers are current. Any reconciliation of an Owner's ledger, Operating Account, Reserve Account, Special Assessment Account or Investment Accounts will be provided by Agent per Attachment B. In addition, Agent shall notify Homeowners of the change in managing Agent and instruct them where to send payments and how to contact Agent.

**Section 31: Emergency Conditions:** Defined as situations in which the life, health, safety and well-being of the Association residents or a significant risk of damage or the potential loss/damage to Association property exists. This may also include situations in which a system failure is or could result in a significant hazard, inconvenience, suspension of essential services or restrict access to residents and/or situations where the security/safety of the residents is compromised. Agent has the authority to respond to these situations and obligate Association funds. Agent will use best judgment when managing these situations and will make best efforts to notify the BoD.

**Section 32 Dispute Process:** The Association and Agent will first attempt to informally resolve any disputes and then resort to formal resolution if both Parties are unable to come to a mutually acceptable agreement during informal discussions.

a. Informal Process: If the Association has a dispute in relation to a portion of the fees invoiced, the Association shall provide notice to the CM in writing within six (6) weeks from the date of the invoice.
   1. Such notice shall set forth the details surrounding the dispute.
   2. The Parties shall discuss the disputed fees within a reasonable amount of time after receiving such notice, but in no event earlier than two (2) weeks and no later than six (6) of having received notice.
   3. The Parties shall met in person or by conference to resolve the dispute.
   4. If the dispute is not resolved within such time period, then either Party may elect to proceed with Arbitration as set forth in paragraph (32.b).
   5. When the dispute is resolved, if an amount is owed to the Association, Agent, at its sole discretion, shall enter (i) credit such amount to the Association's account within thirty (30) calendar days of the resolution of such dispute (or within such other timeframe as mutually agreed upon by the parties in writing), or (ii) apply a pro-rated credit amount against management and or custodial fees to the Association's account for the remainder of the then current term.
   6. The Association waives the right to dispute any fees not disputed within six (6) weeks of the date of the applicable invoice.

b. Arbitration: Any dispute arising out of or related to this Agreement shall be subject to Arbitration in lieu of instituting legal or equitable proceedings by either Party.
   1. The Parties will resolve their disputes by Arbitration which, unless the Parties mutually agree otherwise, shall be in accordance with the Arbitration Rules of the American Arbitration Association (AAA) currently in effect. Request for Arbitration shall be filed in writing with the other Party to the Agreement and with the AAA.
   2. The Arbitrator shall be instructed to accept, what is in the Arbitrators assessment, the most reasonable first offer by both Parties. The intent of which is to bring the arbitration to a quick and reasonable conclusion.

1550 W. Carroll Avenue • Suite 300      6600 W. College Drive • Suite 207
Chicago, IL 60607      O: 312.850.3251   F: 312.850.3253      Palos Heights, IL 60463

13

3. The Arbitration shall take place in Chicago, Illinois, unless another location is mutually agreed upon. Agreements reached in Arbitration shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**Section 33: Vendor Program:** The BoD may identify which contractors/vendors to use at the Association or on any large-scale capital investment projects. Agent will defer to the BoD. In the absence of any guidance or directive from the BoD, Agent will utilize vendors within its Vendor Program.

a. Agent's affiliate will maintain a vendor program controlling third-party service provider access and services provided to the Association. Vendors will enter and exit the program routinely.

b. The BoD may recommend vendors for inclusion in Agent's program, but Agent is under no obligation to utilize or enter these vendors into its program.

c. Current vendor listings captured in Attachment C and posted to Agent's web-site. Agent will periodically provide adjustments to the program or updated lists of vendors to the BoD with Proper Notice.

d. Agent benefits from this program through retention of negotiated discounts and/or direct payments from third-party vendors.

**Section 34: Force Majeure:** Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, government regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

**Section 35: Complete Agreement:** This Agreement, including any specified attachments or addendums, constitutes the entire agreement between the Association and Agent with respect to the management and operation of the Association and supersedes and replaces any and all previous management agreements entered into or/and negotiated between the Association and Agent relating to the Association covered by this Agreement. No change to this Agreement shall be valid without Proper Notice by Agent (Section 2); Agent Compensation (Section 3), Systems, Processes & Procedures (Section 5), Fee Schedule (Attachment B), AOS (Attachment C) and any other attachments to this Agreement are subject to change with Proper Notice by Agent.

**Section 36: Rights Cumulative; No Waiver:** No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either Party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercise from time to time and as often as may be deemed expedient by those Parties.

1550 W. Carroll Avenue - Suite 300
Chicago, IL 60607    O: 312-850-3251   F: 312-850-3258    6600 W. College Drive - Suite 207
Palos Heights, IL 60463

14



**Section 37: Applicable Law and Partial Invalidity:** The execution, interpretation, and performance of this Agreement shall in all respects, be controlled and governed by the laws of the State of Illinois. If any part of this Agreement shall be declared invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

**Section 38: Agreement Binding On Successors and Assigns:** This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Agent and the heirs, administrators, successors, and assigns of the Association.

**Section 39: Counterparts:** This Agreement may be executed in one or more counterparts and shall be effective when one or more counterparts have been signed by each of the parties hereto.

**Signatures:** Each person whose signature is affixed hereto in a representative capacity hereby represents and warrants that he or she is authorized and empowered to execute this agreement.

IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed their respective signatures as of the 1st day of May, 2021.

Agent:                                                              Board of Directors:

_____                    _____
Mike Kennelly, CEO                                            Charles Schaefer, President, BoD,
Phoenix Rising Management, LLC                          Willowview Improvement Association


                                                                     _____
                                                                     Anthony Zangler, Treasurer, BoD,
                                                                     Willowview Improvement Association


                                                                     _____
                                                                     Paul Oggerino, Director, BoD,
                                                                     Willowview Improvement Association

1350 W. Carroll Avenue • Suite 300        6600 W. College Drive • Suite 207
Chicago, IL 60607        o: 312.650.3251    f: 312.650.3258        Palos Heights, IL 60463

15





**Section 37: Applicable Law and Partial Invalidity:** The execution, interpretation, and performance of this Agreement shall in all respects, be controlled and governed by the laws of the State of Illinois. If any part of this Agreement shall be declared invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

**Section 38: Agreement Binding On Successors and Assigns:** This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Agent and the heirs, administrators, successors, and assigns of the Association.

**Section 39: Counterparts:** This Agreement may be executed in one or more counterparts and shall be effective when one or more counterparts have been signed by each of the parties hereto.

**Signatures:** Each person whose signature is affixed hereto in a representative capacity hereby represents and warrants that he or she is authorized and empowered to execute this agreement.

IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed their respective signatures as of the 1st day of May, 2021.

Agent:                                              Board of Directors:

_____                          _____
Mike Kennelly, CEO                               Charles Schaefer, President, BoD,
Phoenix Rising Management, LLC                   Willowview Improvement Association

                                                 _____
                                                 Anthony Zangler, Treasurer, BoD,
                                                 Willowview Improvement Association

                                                 _____
                                                 Paul Oggerino, Director, BoD,
                                                 Willowview Improvement Association



**Attachments:**

A: Bank Resolution
B: Fee Schedule
C: Annual Operations Schedule (AOS)
D: Vendor Program
E: Subsidiaries and Affiliates
F: Inclement Weather

1550 W. Carroll Avenue • Suite 300
Chicago, IL 60607          O: 312-850-3251   F: 312-850-3258          6600 W. College Drive • Suite 207
Palos Heights, IL 60463

16



## BANK RESOLUTION (ATTACHMENT A):

In order to start the process of opening bank accounts for your Association, we require the enclosed two-page resolution from Pacific Premier signed by two BoD members.

Notes and directions:
- Agent Authorization and Agreement: One BoD member signature required at the bottom (any BoD member).
- Association Resolution/ Authorization: Two BoD member signatures required (any 2 BoD members).

Homeowners Association Signature Card and Agreement:

**AGENT AUTHORIZATION AND AGREEMENT**

This Agreement is made by and between Bank and the Association. It incorporates, supplements and supersedes where inconsistent the terms of Bank's account and service agreements.

**Authorized Signers / Designation of Agent.** Association designates each of the persons shown above as an *"Authorized Signer'* on the Association's accounts held with the Bank, including the accounts listed above and any accounts established hereafter, with individual authority to give instructions and conduct transactions on the Association's behalf. In addition, Association represents to Bank that it has appointed and authorizes the HOA Management Company shown on the first page as its agent to: (a) open deposit accounts at the Bank; (b) enter into Bank account and service agreements; (c) agree to security procedures; (d) conduct account and service transactions on behalf of the Association; and (e) designate persons (in addition to the Authorized Signers identified by the Association) who may conduct account and service transactions on behalf of the Association. Bank is authorized to act in accordance with the account and service instructions of the HOA Management Company or any person it designates for that purpose. Association assumes sole responsibility for the actions of the HOA Management Company as its agent, whether or not they are in accordance with the terms of any agreement between it and the Association.

**Account and Service Terms.** Association confirms that the Association or HOA Management Company as Association's agent has received a copy of the account agreement and related disclosures. Association agrees to be bound by the account and service agreements that Bank provides to Association or the HOA Management Company as Association's agent. If the HOA Management Company conducts account or service transactions on behalf of the Association, Association also agrees to be bound by the terms of the HOA Management Company's service agreement with the Bank for such transactions.

**Statements and Notices.** Bank may provide the HOA Management Company with information regarding Association's accounts and services. Statements and notices sent or provided to the HOA Management Company shall be deemed to be received by the Association.

1550 W. Carroll Avenue • Suite 300, Chicago, IL 60607     p: 312-850-3251     f: 312-850-3258     6600 W. College Drive • Suite 207, Palos Heights, IL 60463

17



**Deposits.** The HOA Management Company may: (a) deposit checks and other items that are payable to the Association, with or without the Association's endorsement; (b) endorse checks and other items payable to the Association on behalf of the Association; and (c) conduct account and service transactions on Association's behalf with or without identifying itself as Association's agent.

**ACH Transactions.** If HOA Management Company initiates automated clearing house entries *("Ent ries" )* for the Association, Association agrees that: (a) it assumes the responsibilities of an originator under the rules of NACHA (the "Ru/es") and will reimburse the Bank for any returns, reversals, adjustments, reclamations and warranty claims related to those Entries; (b) Bank may, at its discretion, terminate or suspend the HOA Management Company's ability to initiate Entries or perform other transactions for the Association; (c) Bank assumes no responsibility for the HOA Management Company's actions or omissions; (d) it will provide information regarding the Association's financial condition to the Bank upon its request, and (e) it will (or will cause the HOA Management Company to) provide copies of any authorizations required by the Rules promptly upon the Bank's request and will assist the HOA Management Company and/or Bank in any investigations the Bank conducts regarding the HOA Management Company's or Association's transactions. Association also represents and warrants that: (i) as to each Entry, it has obtained all authorizations required by the Rules and it will not initiate any Entry after any required authorization is revoked; (ii) it will maintain a record of each authorization for a period of two years following its termination; (iii) the Association's Entries will not violate the laws of the United States, including (without limitation) the sanctions administered by the U.S. Treasury's Office of Foreign Asset Control; (iv) the Association will not initiate Entries as a third party sender for others; (v) the Association's Entries will not involve internet gambling, wagering, adult entertainment or any other business that Bank notifies the HOA Management Company or Association is not permitted; and (vi) it has received notice of the Rule regarding provisional payment and of the fact that, if settlement is not received, the RDFI shall be entitled to a refund from the receiver of the amount credited and the Association shall not be deemed to have paid the receiver the amount of the Entry.

**No Duty to Monitor Accounts.** Bank assumes no duty, and shall have no obligation, to monitor account or service transactions by the HOA Management Company to ensure that Association funds are being used properly or for the benefit of the Association. Bank is under no obligation to prohibit the HOA Management Company from commingling its funds with Association funds. Bank will have no obligation to track or question the HOA Management Company's receipt, deposit, or use of checks or other funds deposited to the Association's accounts.

Not withstanding the above, Bank may refuse to accept further deposits to an account, may freeze an account, and/or may close an account in the event: (a) Association notifies Bank of its intention to terminate this Agreement or the HOA Management Company's authority to act on Association's behalf; (b) there is a dispute between the Association and the HOA Management Company regarding any account or service; or (c) Bank is uncertain for any reason regarding any person's authority to conduct account or service transactions.

**Overdrafts.** Association assumes sole responsibility for any overdrafts that occur in its accounts, even if caused by the HOA Management Company.

1550 W. Carroll Avenue • Suite 300          6600 W. College Drive • Suite 207
Chicago, IL 60607          O: 312-850-3251     F: 312-850-3258          Palos Heights, IL 60463

18

**PHOENIX RISING MANAGEMENT, LLC**
RESIDENTIAL COMMUNITY MANAGEMENT

**Indemnity.** Association agrees to indemnify, defend and hold Bank, its officers and employees harmless from any claim, action, proceeding, loss, cost, and expense (including, without limitation, attorney's fees) arising, directly or indirectly, from (a) Bank's actions or omissions based on this authorization and agreement (e.g., actions the Bank takes at the HOA Management Company's instructions with respect to the Association's accounts); (b) the HOA Management Company's failure to comply with any agreement between the' HOA Management Company and the Association; (c) any actions or omissions of the HOA Management Company as the purported agent of the Association (e.g., the HOA Management Company's failure to comply with the Rules); or (d) the Association's actions or omissions. This provision shall survive the termination of this Agreement.

**Amendment.** Bank may add to, delete or change the terms of this Agreement by providing the Association or HOA Management Company as Association's agent with 30 days prior written notice.

**Termination.** Association agrees to provide Bank with at least three business days' prior written notice of Association's election to terminate this Agreement or HOA Management Company's authority to conduct account or service transactions as Association's agent. Bank may terminate this Agreement with or without cause with prior written notice to Association or HOA Management Company as Association's agent.

**Association agrees to the terms set forth above.**

By:

Date: _____

Signature/Title of person authorized
to enter this Agreement on behalf of
the Association

1550 W. Carroll Avenue • Suite 300          6600 W. College Drive • Suite 207
Chicago, IL 60607          o: 312.850.3251    f: 312.850.3258          Palos Heights, IL 60463

19



Homeowners Association Signature Card and Agreement:

## ASSOCIATION RESOLUTION/AUTHORIZATION

"Resolved: Phoenix Rising Management, LLC ("HOA Management Company") is made an agent of this Association and authorized to: (a) open one or more deposit accounts at Pacific Premier Bank (" Bank") in the name and on behalf of this Association; (b) enter into deposit account, funds transfer, cash management, and agent authorization agreements with Bank related to such accounts in the name of this Association; (c) agree to security procedures; (d) designate who is authorized to withdraw funds, initiate payment orders, execute service agreements , enter into agreements with Bank in connection with this Association's accounts and services, and otherwise give instructions on behalf of this Association with respect to such accounts; (e) deposit checks and other items payable to this Association to such accounts; and (f) make withdrawals and transfers from such accounts in connection with its services to this Association.

FURTHER RESOLVED_____(Authorized  *Board  Member  or Association Officer')* is authorized on behalf of this Association to enter into agreements with Bank in connection with Association accounts and services, and to designate other signers on its accounts.

FURTHER RESOLVED: This authorization is in addition to any other authorizations in effect and shall remain in force until Bank receives written notice of its revocation at the address and in the manner designated by Bank."

Certification: I/we certify under penalty of perjury that: (a) the foregoing Resolutions were duly and legally adopted by the governing body of the Association; (b) the Resolutions have not been revoked and are currently in full force and effect; (c) the signatures and titles on this form are the genuine signatures and titles of the persons indicated; (d) the governing body of the Association has and at the time of adoption of said Resolutions had, full power and lawful authority to adopt the foregoing Resolutions and to confer the powers therein granted to the persons named, and that such persons have full power and authority to exercise the same; and (e) no other person's signature or authorization is required to bind the Association with respect to the agreements or transactions described herein.

Dated: _____          Attested to by one other officer:

By: _____          _____

   Secretary Signature:                             Officer Signature


   _____          _____
   Secretary (Print Name)                          Officer (Print Name and Title)

1550 W. Carroll Avenue • Suite 300       6600 W. College Drive • Suite 207
Chicago, IL 60607       Φ. 312-850-3251   Φ. 312-850-3258       Palos Heights, IL 60463

20



## FEE SCHEDULE (ATTACHMENT B):

**Reproduction/Mailings:**

| | | | | | |
|---|---|---|---|---|---|
| Certified Mailings: | At Cost | Envelopes (Small): | $0.25/envelope | Labels: | $0.10/label |
| Checks: | $0.35/check | Envelopes (Large): | $0.75/envelope | Lamination: | $2.00/sheet |
| Copies (Black & White): | $0.20/page | Courier: | $15.00/package | Postage: | At Cost |
| Copies (Color): | $0.50/page | Hand Processing: | $0.50/piece | SouthData: | At Cost |
| Door Hanging Bag: | $1.00/bag | (mailers more than 10 pages) | | | |

**Services applied against individual Owner Account:**

| | | | |
|---|---|---|---|
| Evictions/Rentals: | $105.00/hour | Violation Notice : | $50.00/notice |
| Bank Returns: | $50.00/occurrence | | |

**Additional Services:** Per hour with 1 hour minimum, unless stated otherwise.

- 1096/99 Vendor Processing (tax forms):
  - $50.00 each for first two
  - $25.00 per thereafter
- Access Systems Processing: $30.00/flat
- Accounting Services: $120.00 (quarter hr. increments)
- Bank Fees (outside accounts): $120.00/month
- Bank Runs (coin collection): $60.00/flat
- Biohazard Cleaning: $150.00
- Capital Investment Support: $120.00
- Carpet Cleaning: $60.00
- Clerical: $60.00
- Collections: $120.00 (quarter hr. increments)
- Community Manager: $120.00
- Court Appearance/Preparation: $120.00
- CPA Services: $250.00
- Credit Card Processing: 10% (of total charge)
- Custodial: $60.00
- Delivery Services: $20.00/flat
- Doorman/Security: $60.00
- Emergency Services: $90.00
- Executive Office: $500.00 (Team Leader and above)
- Finance on Receivables: 2% per month
- Handyman/Engineer: $60.00

- Intercom Updates: $30.00/flat
- IT/Web Services: $80.00
- Landscaping: $60.00
- Lock Outs (if key on file): $20.00/flat
- Mail Box Keys: $60.00
- Onsite Lockbox Pick Up: $60.00/flat
- Payables Processing: 1 % gross
- Payroll Processing: 30% (payroll)
- Permits: $500.00/per
- Power Washing: $60.00
- Snow Removal & De-icing:
  - Business Hours: $45.00
  - After Hours: $60.00
- Special Assessments:
  - Initial Set Up (for specials over $5K, applied once):
    - $50.00 per unit
    - Not to Exceed $2,000.00
  - Processing: $120.00
- Surveillance Video Review: $120.00
- Taxes (per appeal):
  - Returns: $500.00/filing
  - Appeals: 5% of total savings
- W-9 (bulk processing): $60.00 per client

- **Closing and Refinancing:** Customized packages processed by HomeWiseDocs (www.homewisedocs.com), a 3rd party contractor. Fees paid to HomeWiseDocs by individual Homeowners. Hourly Accounting Services rate will apply for special requirements requested outside HomeWiseDocs.

- **Emergency Services:** Services provided outside of business hours (9 a.m. – 5 p.m. Monday - Friday) or on federal holidays, weekends or when PRM offices are closed. Services rendered after midnight or on federal holidays or weekends billed at 2-hour minimum.



- **Insurance:**

  - Annual Policy Review:    $1,200.00/flat
    (3rd party brokers)

  - Association and Homeowner Policies:
    - Cost varies by policy
    - PRM fees incorporated into premiums

  - Claims Processing:    $105.00/hour

  - Copies:
    - Policies:    $500.00/flat
    - Extracts:    $200.00/flat
    - Certificates:    No cost

  - Early termination fee: 30%

- **Routine Accounting Services:** Processing of routine assessments, payables, basic questions related to individual owner ledgers and monthly financials. Monthly financials include: Income Statement, Balance Sheet, Cash Disbursement and Aged Receivables.

All fees, unless otherwise noted or directed by the BoD, will be applied against association ledgers.



**PHOENIX RISING MANAGEMENT LLC**

RESIDENTIAL COMMUNITY MANAGEMENT

## ANNUAL OPERATIONS SCHEDULE [(AOS) (ATTACHMENT C)]:

The AOS is updated during the transition and periodically with publication of the draft budget or by Proper Notice.

| Requirement: | Quarter: | | | | Service Frequency | Vendor: | Budget: | | Notes: |
|---|---|---|---|---|---|---|---|---|---|
| | 1st (Jan-Mar): | 2nd (Apr-Jun): | 3rd (July-Sep): | 4th (Oct-Dec): | | | Cost Per Iteration: | Annual Cost: | |
| Annual Meeting (Election): | | | | | | | | | As directed by the BoD: |
| BoD Meeting: | | | | | | | | | As directed by the BoD. |
| Budget Adoption Meeting: | | | | | | | | | As directed by the BoD: |
| Draft Budget To BoD: | | | | X | | PRMG | | | Budget due August/begin projection process June |
| Draft Budget Approved by BoD: | | | | X | | PRMG | | | |
| Budget Adopted: | | | | X | | PRMG | | | |
| Budget Loaded: | | | | X | | PRMG | | | |
| Financial Reports: | X | X | X | X | Monthly | PRMG | | | |
| Year End Financials Mailed: | | X | | | | PRMG | | | |



**VENDOR PROGRAM (ATTACHMENT D):** Periodic vendor updates are incorporated into the Management Agreement with Proper Notice by reference.

The vendors listed below are enrolled in the PRM Vendor Program:

- A-Plus Pest Control.
- ACOA, Ltd. Construction.
- Active Roofing.
- Advanced Pest Solutions.
- All American Exterior Solutions.
- All City Environmental.
- All-Types Elevators.
- Althoff Plumbing
- Assurance Agency.
- Auburn Windows.
- Black Hawk Paving.
- Blaze Electric.
- Bral Restoration.
- Brian Allendorfer Company, Inc.
- BrightView Landscapes.
- Bubbles Window Cleaning.
- Building Reserves.
- Carpets of Highwood.
- CBART Architectural.
- Central States Automatic Sprinklers.
- CertaPro Painting.
- Chicago Building Services.
- Chicagoland Mold Doctors.
- Clark Roofing.
- Coin O-Matic.
- Constellation Energy.

- Corporate Cleaning.
- Door Service.
- Door Systems.
- DuMORE Supplies.
- E&R Towing.
- FHA Review.
- Fields Loss Consultants.
- Generation Rent.
- Great Floors.
- Groot Scavenger Services.
- Hammerbrush Painting.
- Hastings Painting & Decorating.
- HomeWiseDocs.
- Illinois Telephone.
- Inside Out Construction.
- J.C. Restoration.
- J. Hershey Architecture.
- Just Elevator Inspection Service.
- Kordick Electric.
- Lakeshore Recycling Systems.
- LS Contracting Group.
- Marion Restoration.
- Martin Mack Fire & Safety.
- McMaster Painting.
- Metro Mechanical.
- Moldman.

- Mr. Duct.
- Muellermist Irrigation.
- Municipal Backflow.
- MV Heating and Cooling.
- National Heat & Power.
- Non-Stop Locksmith.
- Norton Sons Roofing.
- PayLease.
- Professional Masonry Restoration.
- Quest Construction.
- R. Difoggio & Sam Plumbing.
- Republic Services.
- Ricky Z General Contractor.
- Rosenthal Brothers.
- Scottish Plumbing.
- Semmer Landscape.
- Semper Fi Doorman.
- Smart Elevators.
- Stan's Welding.
- Suburban Elevator.
- Urban Building Services.
- US Alliance Fire Protection.
- Waldman Engineering.
- Warehouse Direct.
- Warton Engineering.
- XL Towing.

Phoenix Rising Services (PRS), an affiliate of Agent, has negotiated a discount fee with each vendor for services provided to the Association. Vendor payments are processed through PRS. PRS will apply and retain discounts as negotiated with each participating vendor.

PRS will schedule vendor services for the Association and facilitate scheduling for individual Homeowners.

Constellation Energy (gas and electric program), PayLease (credit card processing), Groot Scavenger, HomeWiseDocs (closing & refinancing) and Illinois Telephone render payments directly to PRS.

Agent may periodically add or remove vendors from the program.



**Subsidiaries and Affiliates (Attachment E):**

Periodic updates to the subsidiary and affiliate listing are incorporated into the Management Agreement with Proper Notice by reference.

As is consistent with Agent's business model, PRM provides a number of ancillary services; carpet cleaning, consulting, custodial, doorman, emergency services, energy, floor maintenance, handyman, insurance, maintenance, power-washing, project management, security and window washing. Through the incorporation of these services, Agent is able to exercise greater control over quality, scheduling, accountability and costs.

In order to more effectively manage the delivery of these services, maintain better accounting controls and meet insurance requirements, Agent has formally established affiliate organizations. Each affiliate is organized as Limited Liability Corporation, in accordance with Illinois statutes.

The following named entities are affiliates of and controlled by ownership in common with Agent:
- Phoenix Rising Management
- Phoenix Rising Insurance Services
- Phoenix Rising Services

Agent will publish routine updates as we introduce new services and for the required supporting legal structures.

EXHIBIT COVER SHEET                                                                     4393 (Rev. 12/20)

**STATE OF ILLINOIS**
**UNITED STATES OF AMERICA**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**COUNTY OF DU PAGE**

Mike Kennelly,

_____
Plaintiff,

v.

Landmark American Insurance Company,

_____
Defendant,

**2024CH000299**
_____
Case Number

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

File Stamp Here

# EXHIBIT COVER SHEET
Local Court Rules  5.06 and 5.09

**EXHIBIT NAME:** C

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

**Mike Kennelly's Verified Complaint for Declaratory Judgment and Other Relief**

**Document File Date:** Nov 21, 2024

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF:** **Mike Kennelly**

*(Case Party Name)*

Submitted by: Peter G. Syregelas / Lindsay, Pickett & Postel, LLC

Name:  **Lindsay, Pickett & Postel, LLC**    ☐ Pro Se

DuPage Attorney Number:  **334651**

Attorney for:  **Plaintiff, Mike Kennelly**

Address:  **200 W. Madison St., Suite 3850**

City/State/Zip:  **Chicago, IL 60606**

Telephone Number:  **312.794.8343**

Email:  **psyregelas@lpplawfirm.com**



945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
404.231.2366. rsui.com

April 15, 2024

Phoenix Rising Management, LLC
Attn: Mike Kennelly, CEO
2012 Corporate Ln, Ste 108
Naperville IL 60563
Via email: mk@prmchicago.com

Re:   | Insured | : | Phoenix Rising Management, LLC |
|---|---|---|
| Claimant | : | Willowview Improvement Association |
| Policy No. | : | LHR803186 |
| Policy Period | : | 05/01/2023 - 10/01/2023 |
| Limit of Liability | : | $1,000,000 each claim |
| Deductible | : | $25,000 each claim |
| Issuing Company | : | Landmark American Insurance Company |
| RSUI Claim No. | : | 7030194151 |

Dear Mr. Kennelly:

As you know, I am with the RSUI Group, Inc. ("RSUI"), which is the representative of Landmark American Insurance Company ("Landmark") in regard to the above-captioned claim. As you know, Landmark issued Professional Liability Policy No. LHR803186 to Phoenix Rising Management, LLC ("PRM") as the Named Insured, with a policy period of May 1, 2023 to October 1, 2023 (the "Policy").[1]

Landmark issued an acknowledgement letter dated April 2, 2024, acknowledging receipt of the above-referenced claim which we received via e-mail from Susan Krause of the Marsh McLennan Agency on March 30, 2024. After giving this matter careful consideration, and based on current information, Landmark has determined that the Policy does not afford coverage to PRM or any employee or independent contractor of PRM in connection with this matter. The basis for this decision is discussed more fully below.

Under Illinois law, when an insurer believes it has no defense obligation under its insurance policy and wishes to deny a defense, it must file a declaratory judgment action seeking a ruling from the court as to the issues of coverage, or risk a court ruling that it has waived applicable policy language, conditions, or exclusions regarding any duty to indemnify. Landmark does not wish to engage in unnecessary

---

[1] Note that the original term of the Policy was from May 1, 2023 to May 1, 2024, but the Policy was cancelled effective October 1, 2023 pursuant to Endorsement 15. Endorsement 16 to the Policy, which provides for an extended reporting period until October 1, 2026, became effective as of October 1, 2023.

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

litigation and cause needless expense for both you and Landmark. Accordingly, Landmark asks that you withdraw your tender for defense of this matter. **We ask that you carefully review this letter and the attached waiver/withdrawal agreement. If you agree with Landmark's coverage position, we ask that you execute the waiver/withdrawal and return original and electronic copies to our office within 30 days of receipt of this letter.** If we do not receive your response within 30 days, we have been directed to file a declaratory judgment action against you consistent with Illinois law.

## The Claim against PRM

Claimant Willowview Improvement Association ("Willowview") is an Illinois not-for-profit corporation which owns and operates 32 residential buildings in Westmont, DuPage County, Illinois ("the Property"). Claimant filed a Complaint in the Circuit Court of the Eighteenth Judicial Circuit for DuPage County, Wheaton, Illinois on March 18, 2024, naming Michael J. Kennelly ("Kennelly") as the sole defendant.

The Complaint alleges that Willowview entered an agreement with Phoenix Rising Management, LLC ("PRM") on or about May 6, 2021 for management services at the Property. It is alleged that Kennelly, as the manager of PRM, opened accounts at First Citizens Bank for receipt of Willowview funds and payment of Willowview payables, and that Kennelly was an authorized signer on the accounts. The Complaint alleges that, on September 7, 2023, Kennelly informed Willowview that PRM was suspending services at the property as of November 1, 2023, but that PRM actually ceased providing services after September 7, 2023. Willowview claims that following Kennelly's unilateral termination of the management contract, it demanded the return of all accounts and funds established and managed by Kennelly. Willowview allegedly discovered during a subsequent audit that Kennelly had overcharged for professional services not actually performed and charged for services without authorization.

The Complaint presents three counts consisting of Conversion, Fraud, and Breach of Fiduciary Duty. The Complaint alleges Conversion through Kennelly's misappropriation of Willowview funds by charging for professional services not tendered or performed without authorization. The Complaint alleges Fraud on the part of Kennelly, contending that Kennelly knowingly made false representations about the services being provided that were material to the Agreement. Finally, the Complaint alleges that Kennelly owed a fiduciary duty to Willowview, and breached this duty by overcharging for services not rendered or performing and charging for services not authorized. The Complaint seeks damages of $31,182.38, plus punitive damages in the amount of $100,000.

Landmark lends no credence to any allegations in the Complaint, but simply repeats them here for purposes of evaluating coverage for this matter. If you believe that our understanding of the facts or allegations is incorrect, please advise us immediately.

## The Insurance Policy

We now refer you to the Miscellaneous Professional Liability Coverage Form RSG 51025 0722 ("the Policy") issued to PRM for the policy period of 5/1/23 to 10/1/23 affording a $1 million limit of liability each claim subject to a $25,000 deductible.



945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
404.231.2366. rsui.com

The Policy provides, in pertinent part, the following:

### Part I.        Insuring Agreement

#### A.        Covered Services

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, **Advertising Liability** or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1.   **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2.   Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place in a covered territory;

3.   Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place after the **Retroactive Date** as shown in the Declarations.

#### E.        Covered Persons and Entities

2. Any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured.[2]
…

### Part II. Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

---

[2] Endorsement 13 of the Policy adds "independent contractors" of the Named Insured as a covered person or entity.

**A.** Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured.

**D.** Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

**G.** Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement, including the Insured's decision to unilaterally terminate or otherwise alter, remove or abridge any rights, benefits or obligations under any contract or agreement.

****

## Part III. Definitions

**E.** **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered **Damages**, disputes over fees, deposits, commissions or charges for goods or services.

## Part IV. Conditions

**I.** **Other Insurance**

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess, or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims**.

**Endorsement No. 12 – Property Management Additional Exclusions**



945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
404.231.2366. rsui.com

In consideration of the premium charged, it is agreed that **Part II. Exclusions** is amended to include the following:

**F.**     Commingling or inability or failure to pay, collect, disburse or safeguard any funds held by any Insured.

**I.**     Any gain, profit or advantage to which the Insured is not legally entitled.

****

## Landmark's Coverage Analysis

Pursuant to the Insuring Agreement above, the Policy affords coverage for Claims that allege negligent acts, errors or omissions ("E&O") in the performance of PRM's professional services that are first made against PRM within the Policy Period of May 1, 2023 to October 1, 2023. Under the Extended Reporting Period Endorsement, coverage is extended to include Claims that occurred subsequent to the Retroactive Date and prior to the end of the Policy Period, and which are otherwise covered by the Policy, provided that the Claim is first made after the effective date (Oct. 1, 2023) and before the expiration date (Oct. 1, 2026) of the ERP endorsement. In this instance, the Claim was first made on or about March 18, 2024, which is during the Extended Reporting Period. However, there is no coverage for the Claim for the reasons outlined below.

First, Part I.A. of the Insuring Agreement establishes that the Policy covers "Damages and associated Claim Expenses arising out of a negligent act, error or omission…" on the part of the Insured. Here, the Complaint does not allege a negligent act, error or omission. The Complaint contains three counts – Conversion, Fraud, and Breach of Fiduciary Duty. None of these counts alleges a negligent act, error, or omission, but instead allege damages stemming from the purposeful and knowing misappropriation of funds by Kennelly. As such, these counts are excluded from coverage under the Policy. In addition, the Policy definition of a Covered Person includes "any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured." Any alleged misappropriation by Kennelly would be outside the scope of professional services rendered on behalf of PRM, and therefore would not be covered by the Policy.

In addition, pursuant to Section II.A, the Policy excludes coverage for any claims based upon or arising out of dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured. The Complaint alleges willful and fraudulent actions of Kennelly caused the Claimant's alleged damages. To the extent Claimant's damages were caused by the intentional actions of the Insured, Exclusion A of the Policy would preclude coverage under the Policy.

Section II.D of the Policy excludes any claim for any "obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the

absence of such a contract or agreement, including the Insured's decision to unilaterally terminate or otherwise alter, remove or abridge any rights, benefits or obligations under any contract or agreement." To the extent Willowview's Complaint and damages stem from the contract between PRM and Willowview, or from the termination of that contract by PRM and Kennelly, such damages would not be covered under the Policy.

Endorsement 12 of the Policy lists additional exclusions applicable to property management entities. Exclusion F of Endorsement 12 excludes any claim or damages arising from the commingling or inability or failure to pay, collect, disburse or safeguard any funds held by any Insured. Willowview's Complaint and alleged damages extend from the handling of funds held by the Insured via Willowview's accounts. In addition, Exclusion I of Endorsement 12 excludes from coverage any gain, profit or advantage to which the Insured is not legally entitled. The Complaint alleges the subject funds were taken by Kennelly for services that were not rendered, resulting in profit to which he and PRM was not entitled. Exclusion I would therefore also serve to exclude coverage from this matter.

It should also be noted that the definition of "Damages" in Section III.E of the Policy specifically excludes punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered damages. The Complaint makes a claim for punitive or exemplary damages. Such damages are excluded under the Policy. In addition, the Policy definition of Damages specifically excludes any dispute over fees, deposits, commissions, or charges for goods or services. Here, Willowview alleges that Kennelly made unauthorized charges and charged for services not actually performed. Any damages arising from a dispute over fees or charges for goods or services are not covered by the Policy.

Finally, Landmark reserves all rights with regards to other potentially applicable insurance policies available to PRM. Pursuant to Section IV.I. of the Policy, this Policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy. Therefore, we ask that you please identify any and all potentially applicable insurance policies which may apply to the subject loss.

**Landmark's Position**

For these reasons, the Policy does not afford coverage to the Insured with respect to the subject Incident. In this letter, we have identified certain provisions of the Policy that appear particularly relevant to the facts presented. Nothing in this letter constitutes a waiver of any terms or conditions of the Policy or any of Landmark's rights or defenses under the Policy, including those not specifically stated in this letter. Landmark expressly reserves the right to rely upon any terms or conditions of the Policy or any other grounds, which may be found to limit or preclude coverage.

As a result of the foregoing, there is no coverage for the Complaint under the Landmark Policy. As explained above, Illinois law requires that Landmark an insurer to obtain a declaratory judgment when denying a defense to an insured. Landmark has no desire to engage in unnecessary litigation and cause needless expense for both you and Landmark. Accordingly, Landmark asks that you consider withdrawing your tender of the Complaint pursuant to the attached waiver/withdrawal agreement. **Please review this letter and the enclosed agreement carefully. If you agree with Landmark's position, please sign and**



945 E Paces Ferry Rd NE | Suite 1800
Atlanta, Georgia 30326
404.231.2366. rsui.com

**return the agreement to the undersigned within 30 days of your receipt of this letter.** If you do not agree to withdraw your tender of this matter, Landmark will be forced to file a declaratory judgment action against you consistent with Illinois law.

Nothing contained herein, nor any further actions taken by Landmark, should be construed as a waiver of any rights or defenses, whether or not stated herein, which Landmark may possess under the Policy and applicable law. It should be understood that any actions taken by Landmark, its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to Landmark whether or not stated herein, and shall not estop Landmark from asserting at a later date any rights or defenses, whether or not stated herein, that may be available now or at any point in time. We suggest that you immediately notify any other insurer who may provide coverage for the Incident and put them on notice. Please be advised that we are always willing to engage in any discussions which you might care to initiate relative to this matter.

Should you have any questions regarding Landmark's position, please do not hesitate to contact me.

Sincerely,

*Zach Wilson*

Zach Wilson
Chief Claims Specialist
Professional Liability Claims
RSUI Group, Inc.
D: 404-682-7587
M: 470-487-6009
zwilson@rsui.com

cc:

Gene Wilkinson
Eugene.wilkinson@marshmma.com

Kevin Zinter
kevin.zinter@amwins.com

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

**<u>Waiver / Withdrawal Agreement</u>**

<u>RSUI CLAIM # 7030194151</u>

In consideration of RSUI's agreement not to file a lawsuit against Phoenix Rising Management LLC ("PRM") seeking a declaration of no coverage under Professional Liability Policy No. LHR803186 (the "Policy") for the claim brought by Willowview Improvement Association (the "Willowview Claim"), which was reported to RSUI on March 30, 2024 and a copy of which is attached for reference, PRM confirms that it is not seeking a defense from RSUI for the Willowview Claim because it agrees with RSUI that the Willowview Claim is not covered under the Policy.  PRM further agrees it will not assert that, by foregoing a declaratory judgment action now, RSUI has waived or is estopped from asserting any coverage defenses or pursuing a declaratory action in the future.

It is expressly agreed that neither Party is waiving any rights under the Policy except as set forth above and that this Agreement is limited to the Willowview Claim. PRM reserves the right to seek coverage for any future new or amended related or unrelated Claim, provided that any such Claim is reported to RSUI consistent with the Policy's requirements for reporting Claims to RSUI, without regard to the Willowview Claim.

IN  WITNESS  WHEREOF, PRM has caused this Waiver / Withdrawal Agreement to be duly executed and delivered by their proper and duly authorized officer, this _____ day of _____.

Phoenix Rising Management LLC

By:

_____

Name:

Title:

EXHIBIT COVER SHEET

4393 (Rev. 12/20)

**STATE OF ILLINOIS**

**UNITED STATES OF AMERICA**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

**COUNTY OF DU PAGE**

Mike Kennelly,

Plaintiff,

v.

Landmark American Insurance Company,

Defendant,

**2024CH000299**

Case Number

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

File Stamp Here

# EXHIBIT COVER SHEET
Local Court Rules 5.06 and 5.09

**EXHIBIT NAME: D**

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

**Mike Kennelly's Verified Complaint for Declaratory Judgment and Other Relief**

**Document File Date: Nov 21, 2024**

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF: Mike Kennelly**

*(Case Party Name)*

Submitted by: Peter G. Syregelas / Lindsay, Pickett & Postel, LLC

Name: **Lindsay, Pickett & Postel, LLC** ☐ Pro Se

DuPage Attorney Number: **334651**

Attorney for: **Plaintiff, Mike Kennelly**

Address: **200 W. Madison St., Suite 3850**

City/State/Zip: **Chicago, IL 60606**

Telephone Number: **312.794.8343**

Email: **psyregelas@lpplawfirm.com**

CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT©
WHEATON, ILLINOIS 60187-0707

## TOLLING AGREEMENT

This Tolling and Forbearance Agreement ("Agreement") is entered into as of April 24, 2024 (the "Effective Date"), by and between Landmark American Insurance Company ("Landmark") and Phoenix Rising Management, LLC ("PRM"), each of whom is a "Party" to this Agreement and both of whom are the "Parties."

## RECITALS

WHEREAS, Landmark issued a new professional liability policy of insurance to PRM as the named insured, under policy number LHR803186 for the policy period May 1, 2023 to October 1, 2023 (the "Policy");

WHEREAS, on March 18, 2024, a civil lawsuit was filed in the Circuit Court of the Eighteenth Judicial Circuit for DuPage County, Wheaton, Illinois styled, *Willowview Improvement Association, an Illinois not-for-profit corporation v. Michael J. Kennelly*, under case number 2024LA000343 (the "Willowview Lawsuit").

WHEREAS, PRM tendered the Willowview Lawsuit to Landmark on March 30, 2024, seeking coverage under the Policy;

WHEREAS, on April 15, 2024, Landmark issued correspondence denying coverage for the Willowview Lawsuit under the Policy, and requesting that PRM withdraw its tender;

WHEREAS, on April 17, 2024, PRM requested that the parties enter into a tolling agreement to allow PRM additional time to review Landmark's position letter;

WHEREAS, the Parties desire to forgo litigating any declaratory judgment lawsuit at this time, while each side desires to preserve their respective rights relating to whether Landmark owes coverage to PRM for the Willowview Lawsuit;

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## PROVISIONS

1.     The Parties incorporate by reference the above recitals and introductory paragraph as if expressly set forth herein.

2.     Upon execution of this Agreement, the Parties agree not to commence any litigation against one another concerning the coverage owed under the Policy for the Willowview Lawsuit while this Agreement is in effect.

3.     The Parties agree that, beginning on the Effective Date, and until termination of this Agreement, any coverage defenses and/or obligations, statute of limitations, statute of repose, laches, or comparable limitation or bar period (the "Limitation Period"), are hereby tolled and shall

not run for any legal action for declaratory judgment (the "Tolling Period"). The Tolling Period shall include the date of termination of this Agreement. None of the calendar dates during the Tolling Period shall be counted or considered for any purpose whatsoever regarding the passage of time when calculating the Limitation Period.

4.      A Party may terminate this Agreement by providing all other Parties at least seven (7) days written notice. Termination shall be effective seven (7) days after notice is received or at a later date as may be specified in the notice (the "Termination Date"). Any Party may file a coverage action or other litigation against another Party to this Agreement at any time after the Termination Date. Should another insurer, entity, or any other person not a party to this Agreement bring an insurance coverage action pertaining to the Willowview Lawsuit, naming Landmark as a party and seeking a determination of the rights and obligations of the Parties, this Agreement shall terminate upon notice to PRM of service of such insurance coverage action on Landmark.

5.      The period of time during the Tolling Period shall not be asserted or used by any Party to the detriment or disadvantage of any other Party in connection with any determination of the rights, responsibilities and obligations of Landmark or PRM under the Policy, whether in connection with the timing of the filing of a declaratory judgment action, any claim or defense (including, but not limited to, estoppel and/or waiver) or otherwise, in the event a coverage action or any other litigation between the Parties is filed.

6.      PRM shall not be prejudiced in its right to seek defense or indemnity coverage from Landmark by virtue of PRM's participation in this Agreement. Landmark shall not be prejudiced in its right to deny its duty to defend or duty to indemnify PRM by virtue of Landmark's participation in this Agreement.

7.      The written notices contemplated herein shall be addressed as follows:

a.      If to Landmark:

Zach Wilson
RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326
Zwilson@rsui.com

b.      If to PRM:

Phoenix Rising Management, LLC
Attn: Mike Kennelly, CEO
2012 Corporate Ln, Ste 108
Naperville, IL 60563

mk@prmchicago.com

The persons to whom notices are to be sent and the addresses for said notices may be changed by a Party hereto or its authorized agent by providing written notice to all other Parties.

8.      Each Party expressly reserves and does not waive, any and all rights, claims and defenses that it has, had or may come to have against another party except as specifically provided for in this Agreement.

9.      This Agreement governs the rights, and binds and inures to the benefit of, all of the Parties, and their predecessors, successors and assigns, employees, agents and representatives, any persons or entities acting on their behalf.

10.      Nothing contained in this Agreement shall be taken or construed to be an admission of any liability, coverage, responsibility, fault or wrongdoing by any of the Parties hereto, or as a waiver of any right except as expressly set forth herein, and shall not be used in evidence in any action or proceeding for any purpose other than in the enforcement of the terms hereof.

11.      No supplement, modification, waiver or amendment with respect to this Agreement shall be binding unless executed in writing by the Party against whom enforcement of such supplement, modification, waiver or amendment is sought.

12.      The Parties agree that the terms of this Agreement and all communications between the Parties regarding this Agreement are compromise negotiations for purposes of Federal Rule of Evidence 408 and Illinois Rule of Evidence 408.

13.      This Agreement is the product of negotiation and is prepared by and among each Party hereto. Therefore, the Parties acknowledge and agree that this Agreement shall not be deemed to have been prepared or drafted by one Party or the other, and it shall be construed accordingly.

14.      It is not necessary that the Parties execute the same document, and this Agreement may be executed by the Parties signing either the original printed document or any copy. Facsimile and electronic signatures shall be deemed as effective as original signatures. Thereafter, all signed copies of this Agreement shall constitute an original document.

WHEREFORE, the Parties hereto agree to the terms of this Agreement and agree to be bound by its terms and affix their respective signatures on the date appearing below their names.

LANDMARK AMERICAN INSURANCE COMPANY

_Zach Wilson_
Signature

_Zach Wilson_
Printed Name

_Chief Claims Specialist_
Title

Date: _4/25/24_


Phoenix Rising Management, LLC

_____
Signature

      Michael J. Kennelly
_____
Printed Name

      CEO
_____
Title

      April 24, 2024
Date: _____

EXHIBIT COVER SHEET                                                                4393 (Rev. 12/20)

**STATE OF ILLINOIS**                    **UNITED STATES OF AMERICA**         COUNTY OF DU PAGE
                            **IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

Mike Kennelly,

Plaintiff,

v.

Landmark American Insurance Company,

Defendant,

**2024CH000299**

Case Number

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 30311633
2024CH000299
FILEDATE: 11/21/2024 2:29 PM
Date Submitted: 11/21/2024 2:29 PM
Date Accepted: 11/22/2024 1:12 PM
EM

File Stamp Here

# EXHIBIT COVER SHEET
Local Court Rules 5.06 and 5.09

**EXHIBIT NAME: E**

**TITLE OF DOCUMENT THIS EXHIBIT BELONGS WITH:**

**Mike Kennelly's Verified Complaint for Declaratory Judgment and Other Relief**

**Document File Date:** Nov 21, 2024

*(The file date of the document this exhibit belongs with)*

**EXHIBIT FILED ON BEHALF OF:** **Mike Kennelly**

*(Case Party Name)*

Submitted by: Peter G. Syregelas / Lindsay, Pickett & Postel, LLC

Name:    **Lindsay, Pickett & Postel, LLC**    ☐ Pro Se

DuPage Attorney Number: **334651**

Attorney for: **Plaintiff, Mike Kennelly**

Address: **200 W. Madison St., Suite 3850**

City/State/Zip: **Chicago, IL 60606**

Telephone Number: **312.794.8343**

Email: **psyregelas@lpplawfirm.com**

CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT©
WHEATON, ILLINOIS 60187-0707



CHICAGO
200 W. Madison Street
Suite 3850
Chicago, IL 60606
(312) 629-0208

MILWAUKEE
250 E. Wisconsin Ave
18th Floor
Milwaukee, WI 53202
(414) 223-5708

November 13, 2024

**Via email only:**
Zach Wilson
RSUI Group
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326
zwilson@rsui.com

|  |  |  |
|---|---|---|
| **Re:** | Insured : | Phoenix Rising Management, LLC |
|  | Claimant : | Willowview Improvement Association |
|  | Policy No. : | LHR803186 |
|  | Policy Period : | 05/01/2023 - 10/01/2023 |
|  | Limit of Liability : | $1,000,000 each claim |
|  | Deductible : | $25,000 each claim |
|  | Issuing Company : | Landmark American Insurance Company |
|  | RSUI Claim No. : | 7030194151 |

Mr. Wilson:

Please be advised that PRM intends to withdraw from the enclosed standstill agreement executed on April 25, 2024.

We are providing notice to you as required under the standstill agreement.

Very truly yours,
**LINDSAY, PICKETT & POSTEL, LLC**

Peter G. Syregelas

PGS
Cc via email: Brian R. Hallett
Lindsay, Pickett & Postel, LLC
bhallett@lpplawfirm.com

**PETER G. SYREGELAS**
(312) 970-5661
psyregelas@lpplawfirm.com