UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIKE KENNELLY,

        Plaintiff,

      v.

LANDMARK AMERICAN INSURANCE
COMPANY,

        Defendant.

No. 24 CV 13264

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Mike Kennelly was the owner and CEO of Phoenix Rising Management, a property management services provider. While operating that business, Kennelly took out a professional liability insurance policy with Landmark American Insurance Company. A former client sued Kennelly for conversion, fraud, and breach of fiduciary duty, and he filed a claim with Landmark for indemnification and a defense. Landmark denied coverage. After Kennelly filed this declaratory judgment action in DuPage County Circuit Court, Landmark removed the case to federal court and moved to dismiss under Rule 12(b)(6). Because the underlying lawsuit against Kennelly could not result in damages or claim expenses covered by the insurance policy, the motion is granted.

## I.  Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). While a plaintiff does not need to make detailed factual allegations, he must provide "more than mere

'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

I assume that a complaint's well-pleaded factual allegations, but not its legal conclusions, are true. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). I also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). If "an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips*, 714 F.3d at 1020.

## II.  Background

Mike Kennelly owned and operated Phoenix Rising Management, LLC, a property management business. [1-1] at 47–48.[1] Phoenix Rising managed rental buildings for property owners, including the Willowview Improvement Association. [1-1] at 47. Per its contract with Willowview, Phoenix Rising coordinated property maintenance, kept financial records, and collected rent. [1-1] at 55–56. In return,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header at the top of filings. The facts are taken from the complaint and the exhibits incorporated therein. [1-1].

2

Phoenix Rising was authorized to withdraw a monthly fee from the accounts it opened on Willowview's behalf. [1-1] at 55.

That ended in September 2023, when Kennelly terminated all the employees of Phoenix Rising, and his Community Association Management License was suspended by the Illinois Department of Financial and Professional Regulation. [1-1] at 49. According to the state regulator, it suspended Kennelly's license for:

> i) removing Association funds without authority; ii) failing to account for or to remit said funds; iii) acting in a professionally incompetent and grossly negligent manner in performing duties of the Community Association Manager; iv) engaging in gross overcharging for professional services not tendered or performing and charging for services without authorization; and v) engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public as the owner and CEO of Phoenix Rising Management, LLC.

[1-1] at 49. That same month, Kennelly terminated the contract with Willowview, and Phoenix Rising never performed any additional services. [1-1] at 49.

Immediately following contract termination, Willowview asked Kennelly to return all funds held in the accounts he established and managed on its behalf. [1-1] at 49. Kennelly wrote three checks, one for each account, and sent them to Willowview. [1-1] at 50. But there was a problem. Kennelly returned about $31,000 less than the account balances shown on the August statements. [1-1] at 50. Willowview then sued Kennelly for conversion, fraud, and breach of fiduciary duty. [1-1] at 50–52.

Kennelly filed a claim with his professional liability insurance provider, Landmark American Insurance Company, seeking to invoke its duty to defend. [1-1] at 6. Landmark denied the claim because, it reasoned, the complaint did not allege

"Damages" covered by the policy, Kennelly was not a covered person, and several exclusions applied. [1-1] at 86–87. For covered services, the policy provided that:

> [Landmark] will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as Damages and associated Claim Expenses arising out of a negligent act, error or omission, Advertising Liability or Personal Injury, even if the Claim asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations.

[1-1] at 14. The policy declarations set out that the named insured is "Phoenix Rising Management, LLC" and the covered professional service is "property management for others for a fee." [1-1] at 12. The policy defines "Damages" to mean "monetary judgment, award or settlement, except those for which insurance is prohibited by law," while excluding from the definition "punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered Damages, disputes over fees, deposits, commissions or charges for goods or services." [1-1] at 18.

Kennelly seeks a declaration that Landmark has a duty to defend and indemnify him in the underlying lawsuit. [1-1] at 8. Landmark moves to dismiss under Rule 12(b)(6). [8].

## III.    Analysis

### A.    Jurisdiction

"A federal court must always satisfy itself that it has jurisdiction. Thus, even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025) (citation omitted).

4

Landmark removed this case to federal court based on diversity jurisdiction, [1], so I must confirm that the parties are completely diverse and the amount in controversy exceeds $75,000, before turning to the merits. 28 U.S.C. §§ 1332(a), 1441 & 1446. As the party invoking federal jurisdiction, Landmark bears the burden to establish that removal is proper. *Ray v. Tabriz*, 110 F.4th 949, 953 (7th Cir. 2024).

Diversity of citizenship has never been in question. In its notice of removal, Landmark asserts that it is a citizen of New Hampshire and Georgia, while Kennelly is a citizen of Illinois. [1] ¶ 13. Absent challenge by Kennelly, that is sufficient to establish complete diversity for the purposes of § 1332(a). *See Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010).

When a defendant removes a case to federal court under § 1441, courts use a two-step process to establish the amount in controversy. First, the defendant must make "a good-faith estimate of the stakes" that is "plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Then, once the defendant has met its burden, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

In an insurance coverage dispute, the amount in controversy is the sum of the indemnity requested by the covered party and, when the policy includes a duty to defend, the expense of providing a legal defense. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 537 (7th Cir. 2006). Where punitive damages are required

to reach the jurisdictional minimum, another two-part inquiry is necessary: "The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount."[2] *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000) (quoting *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211–12 (7th Cir. 1995)).

Landmark's notice of removal was deficient because it failed to support, by a preponderance of the evidence, that more than $75,000 in damages were in controversy. The notice of removal alleges that "Kennelly seeks a declaration that Landmark is obligated to indemnify Kennelly under the Policy for any judgment entered in the Underlying Lawsuit, which seeks judgment against Kennelly in the amount of $131,182.38 ($31,182.38 in compensatory damages and $100,000 in punitive damages)," [1] ¶ 14, and also "a declaration that Landmark is obligated to defend Kennelly in the Underlying Lawsuit and pay defense fees and costs incurred by Kennelly in defending the Underlying Lawsuit," [1] ¶ 15.

Under Illinois law, Kennelly could not be indemnified for punitive damages arising out of his own misconduct. *Fox v. Am. Alternative Ins. Corp.*, 757 F.3d 680,

---

[2] While step two in the amount-in-controversy inquiry and step two in the punitive-damages inquiry are similar, they serve different purposes. The former focuses on whether some statutory or contractual bar keeps the plaintiff from recovering more than the jurisdictional minimum, *see Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011), whereas the latter focuses on whether the ratio of punitive damages to compensatory damages is legally permissible, *see Del Vecchio*, 230 F.3d at 978–81; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (noting that "few awards exceeding a single-digit ratio between punitive and compensatory damages" will be constitutional).

683–84 (7th Cir. 2014) ("[I]n Illinois, public policy prohibits insurance against liability for punitive damages that arise out of the misconduct of the insured.") (quoting *Crawford Lab'ys, Inc. v. St. Paul Ins. Co. of Illinois*, 306 Ill.App.3d 538, 544 (1st Dist. 1999)). While Illinois courts have recognized an exception to that prohibition for punitive damages based on vicarious liability, that is not applicable here. *See Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois*, 209 Ill.App.3d 144, 157 (1st Dist. 1990).

Kennelly was the named defendant in the underlying suit, [1-1] at 47, Kennelly's individual conduct was the basis for the underlying claims, [1-1] at 47–52, and Kennelly is the party who brought this declaratory judgment action to seek indemnification for claims arising out of his own conduct, [1-1] at 5. The underlying lawsuit is about Kennelly's own conduct, not conduct he is vicariously liable for, and he could not be insured for punitive damages in such a case. Excluding punitive damages from the amount in controversy leaves only $31,128.38 specified in the notice of removal as in dispute, and so I asked Landmark to submit a supplemental memorandum explaining why the amount in controversy at the time of removal exceeded $75,000. [21].

The authorities Landmark relies on in its jurisdictional statement, [22], to argue that punitive damages should count for amount in controversy in this case are unavailing. Landmark cites no binding appellate authority for that position.[3] The

---

[3] Landmark cites several district court decisions in support of its argument, but they are all either unpersuasive or inapplicable. *See State Auto Prop. & Cas. Ins. Co. v. Raducanu*, No. 13-cv-4526, 2013 WL 12625827 at *2 (N.D. Ill. Nov. 20, 2013) (a case where punitive

$100,000 requested in the underlying complaint for punitive damages cannot count

for the purposes of amount in controversy in this action because it is not recoverable

as a matter of Illinois law. *See Del Vecchio*, 230 F.3d at 978.

Beyond punitive damages, however, Landmark detailed in its jurisdictional

memorandum that defense costs included more than seven months of litigating the

underlying complaint by the time of removal, as well as future pre-trial motions, court

appearances, extensive fact discovery, and the expenses associated with at least two

expert witnesses. [22] at 4–5. That is enough to establish that defense fees and costs

could exceed the approximately $44,000 (or $69,000 if I reduce the amount in

controversy by the $25,000 deductible) necessary to reach the jurisdictional

minimum. This court has jurisdiction under 28 U.S.C. §§ 1332 & 1441 and can

proceed to the merits.

### B.    Merits

Under Illinois law,[4] "an insurer has a duty to indemnify 'when the insured

becomes legally obligated to pay damages in the underlying action that gives rise to

---

damages were unnecessary to reach the amount in controversy requirement, and where the
passing mention that punitive damages could be included came without citation to relevant
authority); *De Falco v. Vibram USA, Inc.*, No. 12-cv-7238, 2013 WL 1122825 (N.D. Ill. Mar.
18, 2013) (a deceptive trade practices case with no indemnification issues); *Westfield Ins. Co.
v. Barick*, No. 2:06-cv-288 PPS, 2006 WL 3354693 at *3 (N.D. Ind. Nov. 17, 2006) (citing the
test from *Del Vecchio* that would require the court to assess if punitive damages are
recoverable as a matter of state law); *State Auto Prop. & Cas. Ins. Co. v. Fruit Fusion, Inc.*,
631 F.Supp.3d 638, 641 (S.D. Ill. 2022) (perfunctory mention that plaintiff in the underlying
complaint was seeking punitive damages without deciding that they were necessary to reach
the jurisdictional minimum).

[4] "A federal court exercising diversity jurisdiction over state-law claims applies the choice-of-
law rules of the state in which it sits." *Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp.*,
126 F.4th 532, 539 n.1 (7th Cir. 2025). Since the forum state is Illinois, which "applies its

---

8

a claim under the policy.'" *Allied Prop. & Cas. Ins. Co. v. Metro N. Condo. Ass'n*, 850 F.3d 844, 847 (7th Cir. 2017) (citing *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 293 (2001)). Once the insured incurs liability, the insurer's duty to indemnify arises only if "the insured's activity and the resulting loss or damage *actually* fall within the [] policy's coverage." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 128 (1992) (emphasis in original).

An insurer's duty to defend is much broader than its duty to indemnify. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579 (7th Cir. 2021). A duty to defend arises if the allegations in the underlying complaint fall within or potentially within the policy coverage. *Id.* at 580. "Illinois decides a duty-to-defend question by applying what is sometimes called the 'eight-corners rule,' meaning that the question is decided by looking only within the four corners of the insurance policy and the four corners of the complaint for which defense is sought." *Id.* at 579–80 (citing *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966 ¶ 63 (4th Dist. 2016)). If an insurer does not have a duty to defend, it cannot have a duty to indemnify. *Meridian*, 441 F.3d at 539.

Liability insurance policies and allegations in the underlying complaint are construed liberally in favor of imposing a duty to defend, resolving all doubts and ambiguities in the favor of the insured. *Prate*, 7 F.4th at 580. An insurer's refusal to defend "is unjustifiable unless it is clear from the face of the underlying complaint

---

own law 'unless an actual conflict with another state's law is shown,'" I apply Illinois law. *Id.* (citing *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)).

that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine*, 154 Ill.2d at 108. "An insurer must defend an insured even if only one theory of recovery in the underlying complaints is within the potential coverage of the policy." *Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020)

When reading an insurance policy, the "primary objective is to ascertain and give effect to the intent of the parties to the contract." *Eljer Mfg.*, 197 Ill.2d at 292. I "must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1040 (7th Cir. 2024) (quoting *Eljer Mfg.*, 197 Ill.2d at 292). In that process, the burden shifts:

> The insured carries the initial burden to show that its loss falls within the terms of the policy. If an insured meets this burden, the burden shifts to the insurer to prove that a policy exclusion applies. If an exclusion applies, the burden then shifts back to the insured to show that an exception to the exclusion applies.

*Walsh Constr.*, 99 F.4th at 1040 (citations omitted). If a policy's terms are clear and unambiguous, they must be given their "plain, ordinary, and popular meaning." *Eljer Mfg.*, 197 Ill.2d at 292–93. If they are ambiguous, the policy will be construed strictly against the insurer. *Sproull v. State Farm Fire & Cas. Co.*, 2021 IL 126446 ¶ 19 (2021). I will not, however, "strain to find ambiguity in an insurance policy where none exists." *Walsh Constr.*, 99 F.4th at 1040 (quoting *Hess v. Est. of Klamm*, 2020 IL 124649 ¶ 16 (2020).

1.    *Policy Coverage*

Looking to the "eight corners" of the insurance policy and underlying complaint, the first question is whether the prospective loss falls under the terms of the policy. For the underlying claim to be within the terms of the policy, it must seek "Damages," arising "out of a negligent act, error or omission," that occurred while performing or failing to perform property management services for others. [1-1] at 14.

At least one claim in the underlying complaint could result in Willowview prevailing on a theory of negligence. Breach of fiduciary duty does not require proving intent, *see Indeck Energy Servs., Inc. v. DePodesta*, 2021 IL 125733 ¶ 47 (2021), and the underlying complaint includes several allegations of negligence. Namely, Willowview alleges that the state regulator suspended Kennelly's Community Association Management License for "i) removing Association funds without authority; ii) failing to account for or to remit said funds; [and] iii) acting in a professionally incompetent and grossly negligent manner in performing the duties of the Community Association Manager." When construing all allegations liberally in favor of imposing a duty to defend, that is sufficient to establish that Willowview could prevail on a negligence theory.

As Kennelly sees it, establishing that Willowview could possibly succeed on a negligence theory is sufficient to trigger a duty to defend. Not so. As the terms of the policy—and Landmark's framing of its own arguments—show, several conditions necessary for coverage to apply have nothing to do with intent. If a lawsuit only pertains to "disputes over fees, deposits, commissions or charges for goods or services," it does not qualify as "Damages" and is not covered. [1-1] at 18. If a lawsuit

11

does not pertain to providing property management services for others for a fee, it likewise would not fall within the terms of the policy. [1-1] at 12–14. Both of those conditions can occur in a negligence action and put that action outside the scope of the policy.[5]

Kennelly has not established that the possible loss falls within the terms of the policy. The underlying complaint shows that the claims are a dispute over fees—the only harm alleged by the underlying complaint is $31,182.38 in fees Kennelly charged for non-tendered or unauthorized services. A dispute over fees cannot result in "Damages" as defined in the policy and so is not covered.

Kennelly argues that the modifier "multiples of any" preceding "covered Damages" is ambiguous because it could be read as also modifying "disputes over fees, deposits, commissions or charges for goods or services." [16] at 2 n.1. A term is ambiguous (and would be construed strictly against the insurer) when it is "reasonably susceptible to more than one meaning." *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 163 (2004). The definition of "Damages" in the policy is not. "Multiples of" does not modify "disputes"; all disputes over fees are excluded from the definition of damages.

The allegations in the underlying complaint also do not arise out of Kennelly's rendering or failure to render property management services. Willowview alleges

---

[5] "[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). Kennelly's decision to focus on intent-based arguments forfeited any other responsive arguments. While I am required to consider whether Kennelly "could prevail under any legal theory or set of facts," I will not "invent legal arguments" for him or "accept as true legal conclusions or unsupported conclusions of fact." *Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006).

that Kennelly committed several business torts, not that he "somehow incorrectly performed" property management services. *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 156 Ill.2d 384, 394 (1993). The underlying complaint is not the type of suit that gives rise to damages or claim expenses covered by the policy here.

### 2. *Exclusions*

While Kennelly has failed to meet his burden of showing that the underlying suit falls within the terms of his policy, thus resolving the case, Landmark has met its burden of showing that a policy exclusion applies to the claim.

The insurance policy does not apply to any claim or claim expenses based upon or arising out of commingling or inability or failure to pay, collect, disburse or safeguard any funds held by any insured. [1-1] at 33, 35. The underlying complaint is all about the commingling and failure to pay, collect, disburse or safeguard funds held by Kennelly. [1-1] at 47–52. Kennelly failed to address the policy exclusions in his response to Landmark's motion to dismiss. [16]. And so even if the underlying complaint sought "Damages" as defined in the policy, and the alleged tortious conduct qualified as the rendering or failure to render property management services, the claim would still be excluded by the terms of the policy.[6]

---

[6] Landmark also argues that the exclusions for "Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured" and "Any gain, profit or advantage to which the Insured is not legally entitled" should apply. [8] at 13. But the intentional-acts exclusion doesn't apply to the claim for negligence within the breach of fiduciary claim. The illegal-gain exclusion may be applicable here, but since deciding the applicability of that exclusion is not necessary to resolve this dispute, and it would require deciding what Kennelly was legally entitled to, I choose not to address it.

## IV.    Conclusion

Landmark's motion to dismiss, [8], is granted. Kennelly's complaint is dismissed with prejudice.[7] Enter judgment and terminate civil case.

ENTER:

_____

Manish S. Shah
United States District Judge

Date: July 30, 2025

---

[7] Ordinarily, a plaintiff should be given an opportunity to amend a complaint after a first dismissal, but here the text of the insurance policy and the allegations of the underlying complaint are fixed. Amendment would be futile.